MARY S. LEE *vs.* NEW YORK LIFE INSURANCE COMPANY.

Suffolk.    November 12, 1941. — December 19, 1941.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Conflict of Laws.   Insurance,* Accident.

Coverage provisions of a contract of insurance must be construed according to the law of the State where it was made.

Under a policy of life insurance issued in the State of Maine providing for double indemnity upon proof "that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause," liability arose upon proof that the insured died of pneumonia caused by restricted breathing and coma which were a result, regarded by physicians as so remote as to be practically negligible, of the proper use, consented to by the insured, of a spinal anesthetic in preparation for an operation for hernia, sought by him when otherwise in good health.

CONTRACT.   Writ in the Superior Court dated January 24, 1941.

The case was heard by *Buttrick*, J.   It was agreed that on "May 9, 1925, the defendant in the State of Maine entered into a contract of life insurance with Francis C. Lee of Dover-Foxcroft, Maine."   The judge found for the plaintiff in the sum of $2,076.   The defendant alleged exceptions.

*B. Aldrich*, (*F. H. Nash* with him,) for the defendant.
*C. Lee*, for the plaintiff.

RONAN, J.   The defendant issued, in the State of Maine, a policy of insurance upon the life of one Francis C. Lee of Maine, in which the plaintiff was named the beneficiary, and which provided for the payment of double indemnity upon

proof "that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause." The insured on September 6, 1940, was in apparent good health and appeared to be normal in every way except that he had been suffering since December, 1939, from a hernia, for the correction of which he went to a hospital in New York where, in preparation for an operation, he was placed upon an operating table. In accordance with the advice of the surgeon he consented to a spinal anesthetic. A solution of metycaine, a derivative of novocaine, was injected by a hypodermic needle in the customary manner and amount by a qualified anesthetist in a proper place in the lower part of the spine. The insured immediately complained that he was unable to breathe, became unconscious and had convulsions. His pulse was not observable and he seemed to stop breathing. All thought of an operation was abandoned. He was revived to some extent by artificial respiration and adrenalin injections, but his breathing was labored and he did not regain consciousness. He remained in a coma until his death on September 10, 1940, from hypostatic broncho-pneumonia, which resulted from his inability on account of his comatose state to discharge normally the fluids in his nose, throat and lungs. The metycaine was the cause of the respiratory failure which, in turn, produced the coma and other symptoms that resulted in pneumonia and death. The chances for the occurrence of respiratory failure from a novocaine anesthetic are so remote as to be commonly regarded by doctors as practically negligible. The respiratory failure was, in this case, unusual and unexpected and was in that sense abnormal. The insured had had no previous experience with this anesthetic and had no knowledge of any particular risks or dangers in its use other than those common to all anesthetics. We have, in substance, stated all the material facts relating to the cause of death that appear in the agreed statement of facts upon which the case was submitted to the Superior Court. The defendant excepted to a finding for the plaintiff.

The parties agree that the only question raised by the defendant's exception is whether the agreed statement warrants a finding for the plaintiff, and this in turn has been narrowed by the parties to the single issue whether the cause of death came within the double indemnity coverage of the policy.

The death of the insured followed the intentional and proper administration of an anesthetic. There was no mistake in the identity of the anesthetic, the quantity used, the place of application or the method by which it was employed. Every external act was done deliberately and voluntarily. There was no external accidental cause. That death supervened as an unforeseen or unexpected result of the administration of the anesthetic would not under our own law or that of various other jurisdictions prove that the death was caused by a "bodily injury effected solely through external, violent and accidental cause." The liability is measured by these words; it does not extend to every accidental result but is limited to results that are produced by the cause described. *Smith* v. *Travelers Ins. Co.* 219 Mass. 147. *Henderson* v. *Travelers Ins. Co.* 262 Mass. 522. *United States Mutual Accident Association* v. *Barry*, 131 U. S. 100. *Landress* v. *Phoenix Mutual Life Ins. Co.* 291 U. S. 491. *Order of United Commercial Travelers of America* v. *Shane*, 64 Fed. (2d) 55. *Pope* v. *Lincoln National Life Ins. Co.* 103 Fed. (2d) 265. *Northam* v. *Metropolitan Life Ins. Co.* 231 Ala. 105. *Ogilvie* v. *Aetna Life Ins. Co.* 189 Cal. 406. *Caldwell* v. *Travelers Ins. Co.* 305 Mo. 619. *McGinley* v. *John Hancock Mutual Life Ins. Co.* 88 N. H. 108. *Wiley* v. *Travelers Ins. Co.* 119 N. J. L. 22. *Burns* v. *Employers' Liability Assurance Corp. Ltd.* 134 Ohio St. 222. *Hesse* v. *Traveler's Ins. Co.* 299 Penn. St. 125. *Kimball* v. *Massachusetts Accident Co.* 44 R. I. 264. *Otey* v. *John Hancock Mutual Life Ins. Co.* 120 W. Va. 434. Other jurisdictions including Maine, where the contract was made, and New York, where the death of the insured occurred, have, however, declined to make any distinction between an accidental result and an accidental cause, and hold that a death resulting from the unforeseen and ex-

traordinary consequences ensuing from the performance of an act is an accidental death caused by such act. *Mutual Life Ins. Co.* v. *Dodge,* 11 Fed. (2d) 486. *Mangol* v. *Metropolitan Life Ins. Co.* 103 Fed. (2d) 14. *Equitable Life Assurance Society* v. *Hemenover,* 100 Colo. 231. *Donohue* v. *Washington National Ins. Co.* 259 Ky. 611. *Taylor* v. *New York Life Ins. Co.* 176 Minn. 171. *Lewis* v. *Ocean Accident & Guarantee Corp. Ltd.* 224 N. Y. 18. *Mansbacher* v. *Prudential Ins. Co.* 273 N. Y. 140. *Provident Life & Accident Ins. Co.* v. *Green,* 172 Okla. 591. *Ocean Accident & Guarantee Corp. Ltd.* v. *Glover,* 165 Va. 283. *Wiger* v. *Mutual Life Ins. Co.* 205 Wis. 95.

The contract of insurance was made in Maine and the rights of the parties are to be determined by the laws of that State. *Millard* v. *Brayton,* 177 Mass. 533. *Russo* v. *Slawsby,* 276 Mass. 126. *Goewey* v. *Sanborn,* 277 Mass. 168. *Northwestern Mutual Life Ins. Co.* v. *McCue,* 223 U. S. 234. *John Hancock Mutual Life Ins. Co.* v. *Yates,* 299 U. S. 178. 2 Beale, Conflict of Laws, § 346.4. The law in that State appears to have been settled by *McGlinchey* v. *Fidelity & Casualty Co.* 80 Maine, 251. In that case it was held that the death of the insured, who was driving a horse that ran away, and who suffered so severely from fright or from exertion in bringing the horse under control without causing the carriage to be upset or to come into collision with some object that he died within an hour, was caused "by bodily injuries effected through external, violent and accidental means," although there was no evidence that any external, violent force had been applied to his body. The reasoning of the court does not rest upon any distinction between external and accidental means and accidental results, but seems to be predicated entirely upon the proposition that the insured died in such a way that in the common judgment of men — which it is said is the common sense view and also the legal view — he died because of an accident and therefore by accidental means. This decision was held not applicable to the facts in *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, 148, 149. The *McGlinchey* case was decided in 1888, and so far as we are aware has not

been questioned or modified by any subsequent decision in that State. See *Bouchard* v. *Prudential Ins. Co.* 135 Maine, 238. Under the law of Maine, the death of the insured, we think, must be held to have been caused by an accident within the terms of the policy.

*Exceptions overruled.*