JOHN HANCOCK MUTUAL LIFE INSURANCE
CO. OF BOSTON *v.* AUGUSTA C. PLUMMER

[No. 6, October Term, 1942.]

*Decided November 18, 1942.*

The cause was argued before BOND, C. J., SLOAN,
JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, MARBURY,
and GRASON, JJ.

*Biscoe L. Gray,* with whom were *Charles H. Knapp, Jr.,* and *Knapp, Tucker, Thomas & Gray* on the brief, for the appellant.

*Herman Berlin,* with whom were *David M. Brenner* and *Aaron Borden* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The appellant, John Hancock Mutual Life Insurance Company, issued in 1932 a life insurance policy agreeing to pay to Augusta C. Plummer, appellee, the sum of $3,000 upon the death of her stepson, Jack W. Plummer. By a supplementary contract, issued in consideration of a special yearly premium of $7.50, the company agreed to pay an additional sum of $3,000 upon proof that the death of the insured occurred directly and exclusively as the result of bodily injury "caused solely by external, violent and accidental means, of which there is a visible wound or contusion on the exterior of the body (except in case of drowning or of internal injuries revealed by an autopsy)."

The insured, a shipyard laborer, twenty-eight years old, died on April 7, 1941, after he had been given an anesthetic by his dentist, Dr. Nathaniel S. Nuger. The beneficiary, bringing suit in the Baltimore City Court for the accidental death benefit, alleged that the insured died as a result of an anesthetic administered for the purpose of extracting his teeth. The court overruled a demurrer to the declaration. On February 25, 1942, the jury rendered a verdict in favor of the plaintiff for $3,154.50. This appeal was taken from the judgment entered upon the verdict.

Dr. Howard J. Maldeis, Chief Medical Examiner for the State of Maryland, who performed an autopsy on the insured's body, testified that the cause of death was asphyxiation due to the administration of nitrous oxide anesthetic. On the contrary, Dr. John C. Krantz, Jr., Professor of Pharmacology in the School of Medicine of the University of Maryland, testified that in his opinion,

based on a chemical analysis which he made of a specimen of the insured's blood, the nitrous oxide gas was not the cause of death. It is beyond question that the death was accidental, for the term "accidental" means that which happens without intention or design, and which is unexpected, unusual and unforeseen. *United States Mutual Accident Assn. v. Barry,* 131 U. S. 100 9 S. Ct. 755, 33 L, Ed. 60, 67; 7 *A. L. R.* 1131; 1 *C. J., Accident Insurance,* Sec. 72; 29 *Am. Jur., Insurance,* Sec. 931. But the contract now before us does not provide for double indemnity in every case of accidental death, but only in certain cases where death results from bodily injury "caused solely by external, violent and accidental means." The special premium required by the supplementary contract was small, and the extent of the company's liability was carefully expressed. It is a fundamental rule that a contract of insurance, like any other contract, should be given a reasonable construction so as to effectuate the real intention of the parties giving to the language employed, when unambiguous, its ordinary and usually accepted meaning. *United Life & Accident Insurance Co. v. Prostic,* 169 Md. 535, 182 A. 421. While it is generally accepted that an insurance policy should be construed in favor of the insured in case of ambiguity, the terms of a policy cannot be extended by forced construction where the language is clear and the meaning plain. *Blunt v. Fidelity & Casualty Co.,* 145 Cal. 268, 78 P. 729. It would obviously be just as improper for a court to make a policy more beneficial to the insured by extending its coverage by strained construction as it would be to award more than the stipulated amount of insurance.

There is a conflict of opinion in the construction of accident insurance policies on the issue raised by this appeal. *Lee v. New York Life Insurance Co.,* 310 Mass. 370, 38 N. E. 2d 333; 29 *Am. Jur., Insurance,* Sec. 1002. But the Supreme Court of the United States pointed out in the Tennessee golfer's sunstroke case in 1934 that, where the stipulated liability in an insurance policy is for in-

jury resulting from an accidental external means, the distinction between accidental external means and accidental result has been generally recognized and applied. Justice Stone said in that case: "But it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man * * * for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result." *Landress v. Phoenix Mutual Life Insurance Co.,* 291 U. S. 491, 54 S. Ct. 461, 462, 78 *L. Ed.* 934, 90 *A. L. R.* 1382. We adopt the majority view that a means is not made accidental, within the terms of a policy providing for double indemnity in case of death resulting from bodily injury caused solely by external, violent and accidental means, merely because death results unexpectedly, where the means consists of a voluntary and intentional act occurring in the usual manner.

Thus, in accordance with the weight of authority, we specifically hold that the death of an insured resulting from the proper use of an anesthetic while he is undergoing an operation is not covered by a policy insuring against death from bodily injuries caused solely by external, violent and accidental means. *Fletcher v. Security Life & Trust Co.,* 220 N. C. 148, 16 S. E. 2d 687; *Davis v. Jefferson Standard Life Insurance Co.,* 73 F. 2d. 330, 96 *A. L. R.* 599, *certorari* denied 294 U. S. 706, 55 S. Ct. 352, 79 *L. Ed.* 1241; *American National Insurance Co. v. Belch,* 100 F. 2d 48, overruling *Mutual Life Insurance Co. of New York v. Dodge,* 11 F. 2d 486, 59 *A. L. R.* 1290.

To recover on a contract insuring against injury or death inflicted by external, violent and accidental means, the beneficiary must allege and prove that the cause of the injury or death was external, violent and accidental. *Travellers' Insurance Co. v. McConkey,* 127 U. S. 661, 8 S. Ct. 1360, 32 *L. Ed.* 308; *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 455, 137 A. 43; *Metropolitan Life Insurance Co. v. Neikirk,* 175 Md. 163, 173, 200 A. 370;

29 *Am. Jur., Insurance,* Sec. 933. Since the plaintiff in this case failed to allege facts establishing the liability as defined by the supplementary contract, the court should have sustained the demurrer to the declaration.

At the trial of the case the dentist explained that he did not use novocaine because he feared the danger of spreading the patient's septic condition. He testified that he administered the gas in the customary way, and that the patient was breathing well during the operation. He declared that no mishap or anything unusual or unexpected occurred while he was administering the anesthetic. He was unable to express an opinion as to the cause of the insured's death. He stated that the gas was similar to that used by all hospitals and dentists, and was checked and certified by the City of Baltimore as to purity. Since the law imposes a duty upon professional men to exercise ordinary care and skill in their work, the court will presume that an operation by a physician or dentist has been carefully and skillfully performed in the absence of proof to the contrary. *State, to Use of Kalives v. Baltimore Eye, Ear and Throat Hospital,* 177 Md. 517, 526, 10 A. 2d 612.

Since there was no evidence legally sufficient to show that a mistake or mishap occurred in the use of the anesthetic, and it was not shown that the insured's death was caused by external, violent and accidental means independently of any other cause as required by the contract, the judgment in favor of the appellee must be reversed.

*Judgment reversed, without a new trial, with costs.*