### LEVIN v. JOHN HANCOCK MUT. LIFE INS. CO.

### No. 254.

Municipal Court of Appeals for the District of Columbia.

March 30, 1945.

Arthur L. Willcher, of Washington, D. C. (Julian H. Reis, of Washington, D. C., on the brief), for appellant.

Arthur P. Drury, of Washington, D. C. (Benjamin S. Minor, John M. Lynham, and John E. Powell, all of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellant is the widow of Nathan J. Levin and beneficiary of a policy of insurance written on his life by appellee. Upon his death appellee paid the beneficiary $1000 representing the basic amount of the policy but refused payment of an additional $1000 which was claimed by virtue of the allegedly accidental death of insured. The trial court directed a verdict against appellant and this appeal has been taken to determine the correctness of that ruling.

The applicable part of the policy is contained in a rider or endorsement, by which the company bound itself for an additional premium to pay double indemnity—or $2000 instead of $1000—

"Upon receipt of due proof of the death of the insured prior to the anniversary of the policy nearest his sixty-fifth birthday, as the result of bodily injury received after this contract becomes effective, *caused solely by external, violent and accidental means, of which there is a visible wound or contusion on the exterior of the body* * * * and that such death occurred within ninety days after such injury and as a direct result thereof, independently and exclusive of all other causes * * *." (Emphasis supplied.)

The insured, Nathan Levin, was employed as assistant manager and salesman in a shoe store. One night he and the manager were shifting merchandise cases on the first floor of the store and replacing them with tables from the basement. Empty, the cases weighed 75 to 100 pounds and filled with shoes, approximately 150 pounds. They were enclosed at the ends, awkward to handle and a person moving them had

to assume a straddling position. The stairway to the basement was extremely narrow, allowing only about an inch clearance on each side; also the walls were so constructed that it was necessary to upend the tables in making a turn and required a great deal of "wiggling and waggling" of the tables. After about three hours of such work the insured sat down and complained that he was tired, that he had a pain in his side, and said he thought he had strained himself. He rested for some fifteen minutes and then continued to work for about another hour. On the way home he again complained of the pain in his side and again said he had strained himself. The testimony of the manager of the store as well as a written statement of insured himself (furnished in connection with his Workmen's Compensation Insurance) disclosed that insured did not on the occasion involved slip or fall or have any mishap.

Medical examination revealed that insured had sustained a hernia. (His statement, above referred to, averred that he had never previously had a hernia or worn a truss.) A month later he was operated on for the hernia, had an uneventful recovery and left the hospital in eighteen days. Two days later, however, he became seriously ill and died. The attending physician gave it as his opinion that an embolism (blood clot) had resulted from the operation and had travelled either to the heart or lung and had caused a stoppage of the coronary artery, which in turn caused death. The physician also said that it is not necessary to have a mishap such as a slip or fall in order to have a hernia; that some persons are born with hernias and that the condition can result from a weakening of the abdominal muscles without any particular strain being put on them. He also said that the insured had a thin abdominal wall and a lagging of the intestines and that within three months preceding the alleged injury he had advised insured to wear athletic trunks for support. He also said that the father and mother of insured had heart trouble and that a year before the operation he had made an electro-cardiogram of insured which showed some evidence of heart damage; also that persons can die from a stoppage of the coronary artery without ever having been operated on.

We must decide whether the trial judge was right or wrong in taking the case from the jury and ruling as a matter of law for the insurance company. We think he was right.

An almost identical case was recently before the United States Court of Appeals for the District of Columbia. Prudential Insurance Company v. Beckwith, 67 App. D.C. 209, 91 F.2d 240, 244. There a plumber died as a result of strain put upon his heart by helping to carry an old bath tub down the stairs from a second floor and a new one back up the same stairs. While doing such work there was no mishap such as slipping, falling or dropping the tub and no undue strain on insured or his co-worker other than the ordinary strain of weight carrying. There the policy, like the one here in suit, protected against death resulting from "bodily injury, solely through external, violent and accidental means." In denying recovery, the court pointed out that the policy did not protect against an accidental *result* but that payment under such a clause became due only when the *means* of the injury are shown to be accidental. Summing up the law the court said:

"It may be observed again that when the insured and Clark carried the tub in the manner described in the agreed statement of facts there was no mishap of any kind, such as slipping, falling, or dropping the tub, no undue strain was thrown on either Beckwith or Clark, other than the ordinary strain of weight carrying. It follows that this strain caused the death of Beckwith, but it was not an accidental strain nor did it result in anywise from an accidental cause. It is true that the insured's death might be referred to as an accident, but, as stated by Mr. Justice Stone in Landress v. Phoenix Mutual Life Ins. Co. [infra], the means was not accidental, and accordingly no accident happened within the purview of the policies."

In the Landress case (Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934, 90 A.L.R. 1382), referred to in the quotation just given, the Supreme Court held that death caused by sunstroke suffered while playing golf was not within the protective purview of a clause insuring against death effected through "external, violent and accidental means." The Supreme Court said:

"* * * it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man—that the result of the exposure 'was something unforeseen,

unsuspected, extraordinary, an unlooked-for mishap, and so an accident,' * * * for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. *The insurance is not against an accidental result.* The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by *means which are external and accidental."* (Emphasis supplied.)

■ With these explicit decisions before us; with no real difference between the facts in the Beckwith case and this one; with no distinction in the applicable legal principles between this case and either the Beckwith or the Landress cases, we think our duty is clear and that we must hold that under the law of the District of Columbia this insured cannot be said to have died from injuries "caused solely by external, violent and accidental means." Giving the evidence a construction most favorable to appellant, as we have done, and indulging every reasonable inference in her favor there is still no legal basis upon which we can say that she was entitled to go to the jury. Upon the showing made, if the case had been submitted to the jury a verdict in favor of appellant could not have been allowed to stand.

■ But there is more to the case. Appellant makes another contention which requires serious consideration. Her counsel presses upon us the argument that because the policy was delivered in Massachusetts the law of that state rather than of the District of Columbia governs. This is unquestionably true. Mutual Life Ins. Co. v. Cohen, 179 U.S. 262, 21 S.Ct. 106, 45 L.Ed. 181; Northwestern Mut. Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57; Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398.

But, as we see it, the Massachusetts cases have taken the same view as that expressed in the Beckwith case. Among them are:

Smith v. Travelers' Insurance Company, 219 Mass. 147, 106 N.E. 607, L.R.A. 1915B, 872, which involved a claim for the death of one who in using a nasal douche had drawn the substance into his nostrils more violently than usual. Denying liability, the court said:

"But there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was *no bodily injury effected through a means which was both external and accidental.* But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an *accidental result* of the external cause, *but that cause itself must have been, not only external and violent, but also accidental."* (Emphasis supplied.)

Henderson v. Travelers' Insurance Company, 262 Mass. 522, 160 N.E. 415, 56 A.L.R. 1088, presented the question whether the insured could recover upon a showing that in making several dives into a swimming pool he got water into his nose and ears resulting in a mastoid. The court declined to hold that the means of the injury was "external, violent and accidental."

Lee v. New York Life Insurance Company, 310 Mass. 370, 38 N.E.2d 333, the latest of the applicable Massachusetts decisions, involved a claim for death resulting from a spinal anesthetic. The drug had been properly injected, and there was no external or violent cause of death. The Massachusetts court held the insurer liable, but carefully explained that it was declaring liability under decisions of the state of Maine, it being a Maine contract, and the opinion made it plain that under Massachusetts law there would have been no recovery.

Appellant cites us to two other Massachusetts cases, which we have studied with care. One is Sontag v. Galer, 279 Mass. 309, 181 N.E. 182, which involved a violent assault. The other is Dow v. United States F. & G. Co., 297 Mass. 34, 7 N.E.2d 426, which involved a claim for death resulting from second and third degree burns sustained in a tub of scalding water. The policy provisions as well as the facts in both cases are so dissimilar from the one before us, as to furnish no helpful guide in the determination of this appeal.

Affirmed.