146

United States Court of Appeals
District of Columbia.

Argued Oct. 26, 1945.

Decided Dec. 10, 1945.

Mr. Francis C. Brooke, of Washington, D. C., with whom Mr. Paul B. Cromelin, of Washington, D. C., was on the brief, for appellant.

Mr. John D. Sadler, of Washington, D. C., for appellee.

Before EDGERTON, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

Frank J. Stauffer, a retired mail clerk about seventy-four years of age, died on December 6, 1943. He had been in ill health for more than two years and had undergone three operations during that time. He had suffered from arteriosclerosis, hypertension and an irreducible inguinal hernia. In addition, in March prior to his death he had the misfortune of sustaining a broken hip. Some ten days before his death, Stauffer was seriously ill and was advised by a physician to remain in bed at all times.

Late in the evening of December 5, Stauffer's wife, the appellee here, who was in the room next to that occupied by him, went into the decedent's room and discovered that he was attempting to get out of bed. He was endeavoring to elevate his body by the use of his elbows, and had succeeded in getting one foot out of the bed. Mrs. Stauffer put him back in bed and admonished him that he must not get up. In about twenty minutes Stauffer became quite pale, and within a short time he died. An autopsy revealed that an intraperitoneal hemorrhage was the immediate cause of death. The medical testimony is to the effect that the necessarily strained and awkward attempt made by the decedent to raise himself in the bed had drawn the omentum from the scrotal contents (into which it had descended previously and where apparently it had adhered) into the abdominal cavity and had ruptured a peritoneal vessel. The hemorrhage resulted. The medical witnesses agree that except for the existence of the hernia, there would have been no hemorrhage.

Stauffer held a certificate of insurance issued by the appellant which obligated the latter to pay the appellee $4,000 should his death occur by accidental means. By this appeal, the appellant seeks to review a judgment obtained by the appellee against it in the lower court in an action on the certificate.

The certificate of insurance contained the following provisions:

"Provided, however, no benefit or sum whatsoever shall be payable in any case whatsoever unless the accident alone results in producing visible external marks of injury or violence suffered by the body of the member, nor unless the death or disability results wholly from the injury, and within the time limit above specified. Nor shall any benefit be paid where death or disability results from voluntarily inflicted injuries, by the member, be he sane or insane; nor from poison or other injurious matter taken or administered accidentally or otherwise; nor as the result of any surgical operation.

"Accidental death shall be construed to be either sudden, violent death from external, violent and accidental means, resulting directly from such accidental means, independently and exclusively of any other causes, and not the direct or indirect result of the member's own vicious or unlawful conduct; or death within one year, as the sole result of accidental means alone. There shall be no liability whatever when disease,

defect or bodily infirmity is a contributing cause of death."

It will thus be seen that the insurance company did not agree to be liable for *any* accidental death, but only for (a) a sudden death which was caused by "external, violent and accidental means," or (b) death within one year as the sole result of accidental means. The "accident" relied on by the appellee in the count of the complaint involved in this appeal was the attempt to move, and the consequent rupture. It occurred very shortly before death. So, the death was sudden, but there is no proof that it was caused by external, violent and accidental means. For the insurer to become liable, the death must result "directly from such accidental means, independently and exclusively of any other causes." It is to be noted also that the contract stipulates that "There shall be no liability whatever when disease, defect or bodily infirmity is a contributing cause of death."

These provisions of the contract of insurance are similar to those of the policy involved in Landress v. Phœnix Mut. Life Insurance Co.[1] The Supreme Court pointed out in that opinion that the carefully chosen words of the contract which define liability distinguish between the result and the external means which produce it. Landress had died of sunstroke suffered while playing golf, and the plaintiff's theory was that the sun's rays constituted the external, accidental cause of death. But, Mr. Justice Stone said in the opinion, "The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather, or other circumstances external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured."

We are of the opinion that the evidence in the case at bar does not establish liability as defined in the certificate of insurance. There is no proof that any unforeseen or unintended condition or combination of circumstances, external to the decedent's body, contributed to his death. Nor does the evidence show that there was anything

accidental, unforeseen, involuntary or unexpected in Stauffer's effort to rise. Mrs. Stauffer is the only witness who testified, or could have testified, about what took place at that time. She said nothing in her description of the incident on which there could be based an inference that the means which Stauffer voluntarily employed to get out of bed included anything unforeseen, unexpected or unusual. In this, the facts of the present case differ from the facts considered by the Supreme Court in United States Mutual Accident Association v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60. There Dr. Barry voluntarily leaped from a platform four or five feet to the ground below. He suffered an injury from which death resulted, although previously he had been a vigorous, sound and healthy man. The Supreme Court held that the trial court had acted properly in leaving it to the jury to determine whether after Barry left the platform, or in the act of alighting, there was some unexpected or unforeseen or involuntary movement. In the present case there was no such question to submit to the jury, nor was Stauffer sound in body before he attempted to raise himself by his elbows; on the contrary, his body was frail and diseased, except for which the movement could not have caused the hemorrhage.

As the company agreed to pay only if accidental means caused an injury which produced death, independently and exclusively of any other causes, it follows that the evidence does not support the judgment. We do not overlook Patterson v. Ocean Accident & Guarantee Corporation, 25 App. D.C. 46, cited by the appellee. The insured in that case was an osteopath who strained himself in treating a patient. It was held by the court:

" * * * That a strain received in the ordinary course of the assured's business, if received at all, is an accident within the contemplation of the policy we can have no doubt. United States Mut. Accident Ass'n v. Barry, 131 U.S. 100, 121, 9 S. Ct. 755, 33 L.Ed. 60, 67."

The Patterson case was decided by this court many years before the Landress opinion was handed down by the Supreme Court. We have noted also, in considering this matter, that in Prudential Insurance Co. of America v. Beckwith, 67 App.D.C. 209, 91 F.2d 240, 244, the majority opinion distinguished the Patterson case from the

---

[1] 291 U.S. 491, 54 S.Ct. 461, 462, 78 L. Ed. 934, 90 A.L.R. 1382.

later Landress case written by the Supreme Court by saying:

"It appears therefore that this court's opinion in the foregoing (Patterson) case is consistent with Landress v. Phœnix Mutual Life Ins. Co., supra, for in the case just cited the osteopath suffered a mishap or accident while treating his patient, which mishap or accident was the means causing his death."

In the Patterson opinion the strain is treated as the means and the death as the result, while in the Beckwith opinion, it was considered that the carrying of a heavy burden was the means, and the heart strain was the result. There was nothing accidental about the carrying of the burden. In the Patterson case the osteopath strained himself while treating a patient, but there was nothing to indicate that there was anything accidental in the manner in which he had given the treatment. So the two cases seem to be indistinguishable as to the facts with respect to whether the means which produced the result, as differentiated from the result, were accidental. The Supreme Court held in the Barry case that the means, and not the result, must be accidental, and·its holding in the Landress case is consistent therewith. It seems to us, as pointed out by the dissenting opinion in Prudential Insurance Co. of America v. Beckwith, that the opinion in Patterson v. Ocean Accident & Guaranty Corporation departs from that rule. Insofar as it indicates that the means need not be accidental, the Patterson case is overruled.

The majority opinion in the Beckwith case is helpful in the consideration of the present case. Beckwith and another had carried a bathtub down a flight of stairs and immediately afterward carried a replacement tub up the same steps. During this work there was no mishap of any kind, such as stumbling, slipping, falling, or dropping the tub, and no undue strain was thrown on either Beckwith or his companion except the ordinary strain of weight-carrying. Beckwith died a few minutes after the completion of the work. An autopsy showed the existence of chronic myo-endocarditis. The physicians agreed that the carrying of the tub was an undue stress and strain on Beckwith and was the precipitating cause of the heart attack from which he died. They believed that had Beckwith not undergone any undue stress or strain he could have continued indefinitely in his ordinary labors. Under these circumstances this court concluded that the death of the insured did not result from "bodily injury solely through external, violent and accidental means."

Not only is there a complete absence of evidence that any external accidental means produced Stauffer's hemorrhage, but also it appears clearly that he had a bodily infirmity which was a contributing cause of death, in which event the certificate of insurance stipulates that there shall be no liability whatever. The trial court should have directed the jury to find for the appellant.

Reversed.