FLORENCE KORFIN, PLAINTIFF-APPELLANT, v. CONTINENTAL CASUALTY COMPANY, DEFENDANT-RESPONDENT.

Argued May 22, 1950—Reargued on the Court's own motion June 19, 1950—Decided June 27, 1950.

*Mr. Abe Jacklen* argued the cause for the appellant.

*Mr. Michael J. Donlon* argued the cause for the respondent (*Mr. George D. McLaughlin,* attorney).

The opinion of the court was delivered by

ACKERSON, J.   Plaintiff appealed to the Appellate Division of the Superior Court from an adverse judgment entered on a verdict of no cause of action found by the trial judge, sitting without a jury, in the Law Division of that court, and the appeal, while pending below, was certified here on our own motion.

The action was to recover on an insurance policy issued by the defendant to plaintiff's husband, Alex Korfin, in which plaintiff was the named beneficiary.   The policy provided, *inter alia,* as follows:

"This policy provides indemnity for loss of life resulting from non-occupational bodily injury effected through accidental means \* \* \*."

" 'Injury' as used in this policy means bodily injury which is the sole cause of the loss and which is effected solely through accidental means while this policy is in force."

The facts are not in dispute and come before us in the form of an "Agreed Statement in Lieu of Record" pursuant to *Rules* 4:2–6 and 1:2–22, in which statement appear the following pertinent facts: "On April 21, 1947, the insured voluntarily and on his own initiative made and kept an appointment and was vaccinated by his family physician, Dr. Harry Friedman, with a vaccine for the prevention of smallpox. His death ensued eleven days thereafter, and it is agreed that the cause of the decedent's death was 'post vaccinal encephalitis' as confirmed by the autopsical findings of Dr. Harrison S. Martland, Essex County Medical Examiner." The insured died on May 2, 1947, eleven days after the vaccination.

Encephalitis is defined as "inflammation of the brain" and post vaccinal encephalitis as "an acute form of encephalitis which sometimes follows the administration of vaccine" (*Maloy's Medical Dictionary for Lawyers, p.* 181). At the oral argument of this appeal it was agreed by counsel for each party that the encephalitis which caused the insured's death was produced by the vaccine used in his vaccination.

On this state of facts the trial court concluded that the insured's death was not a compensable loss within the purview of the policy because death was not caused by "accidental means" and judgment was thereupon entered in favor of the defendant which judgment is the subject of this appeal.

Two questions are presented: (a) was the appeal taken within time under *Rules* 4:2–5 and 1:2–5 which require appeals to be taken in a case such as this within 45 days after the entry of judgment, and (b) was the death which ensued after the vaccination "effected solely through accidental means" within the meaning of the policy?

■ ■ Proceeding *in limine* to consider the first question, we note that the judgment was entered in the Law Division

of the Superior Court on December 21, 1949. On January 30, 1950, the defendant was served with and acknowledged service on a copy of the notice of appeal which plaintiff mailed to the Clerk of the Superior Court the following day, January 31, 1950, together with a check in the sum of $20. The said notice of appeal arrived in the clerk's office on February 1, 1950, but was not filed that day since the requisite filing fee is $25 and the account of plaintiff's counsel was $1.74 short of this amount. On February 3, 1950, the attorney was apprised of this fact and on that day a check to cover the deficiency was mailed to the clerk. In the usual course of the mails, this check should have been received by the clerk's office the following morning, Saturday, February 4, 1950, which was the last day for filing. However, according to the practice then prevailing, mail addressed to state offices and received in the State House on a Saturday was not distributed in the various offices in the "Annex," including the clerk's office, until the following Monday morning and consequently was stamped as received on that day. This, notwithstanding the fact that the clerk's office was open on Saturday mornings during that period for the transaction of necessary business. Therefore, in the instant case a stamp was placed upon the notice of appeal on Monday, February 6, 1950, indicating its filing on that date—two days later than the prescribed period of 45 days.

The time fixed by the rules within which an appeal must be taken cannot be relaxed. *Rules* 4:1–10 and 1:7–9; *In re Horton's Estate,* 1 *N. J.* 571 (1949). We think, however, under the foregoing circumstances, this notice of appeal should have been marked filed February 4, 1950, and conclude that the appeal was taken within time.

We now turn our attention to the second and meritorious question presented for solution, *i. e.,* whether the death of the insured following his vaccination was the result of "accidental means" within the terms of the policy.

Defendant attempts to draw a distinction between policies providing for payment for loss effected solely through "acci-

dental means" and benefits payable because of "accidental result," contending that the instant case falls within the latter classification. The position taken by the insurance company is, in substance, that where death occurs as the result of an intentional act, voluntarily undertaken by the assured, it cannot be said to have been caused by accidental means.

We recognize that there is considerable division of authority upon the construction of policies using the term "accidental means." Some adhere to the view that if the means which cause an injury are voluntarily employed, the resulting injury although entirely unusual, unexpected and unforeseen is not produced through accidental means.

In this jurisdiction, however, our courts, following the rule laid down in the case of *United States Mutual Accident Association v. Barry,* 131 *U. S.* 100, 9 *S. Ct.* 755, 33 *L. Ed.* 60 (*U. S.* 1889), have held that it is sufficient to render the means accidental, if in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury. *Lower v. Metropolitan Life Insurance Co.,* 111 *N. J. L.* 426 (*E. & A.* 1933); *Riker v. John Hancock Mutual Life Ins. Co.,* 129 *N. J. L.* 508 (*Sup. Ct.* 1943). In the latter case, 129 *N. J. L.* at pages 510-511 it was stated that "The term 'accidental means' was employed in the policy in its usual and popular sense, *i. e.,* as signifying a 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected.'" Any ambiguity in the terms of the policy is to be resolved in favor of the insured. *Caruso v. John Hancock Mutual Life Insurance Co.,* 136 *N. J. L.* 597, 598 (*E. & A.* 1947).

It may be generally stated therefore that where something unforeseen, unusual and unexpected occurs in the act preceding an injury or death, although the act be voluntary and intentional, the injury is one which arises through accidental means. This is particularly true in cases of this nature where the administration of a vaccine produces a reaction which is not normally produced.

In the case of *Western Commercial Travelers' Ass'n.* v. *Smith,* 85 *F.* 401, 405 (*C. C. A. 8th Cir.* 1898), it was observed that

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

The case of *Taylor v. New York L. Ins. Co.,* 176 *Minn.* 171, 222 *N. W.* 912, 60 *A. L. R.* 959, 961 (*Minn. Sup. Ct.* 1929), is particularly in point, and in holding that the administration of novocaine as a local anaesthetic to a person hypersusceptible thereto was an "accidental means" causing death, the court said:

"It has been judicially stated that probably from a strictly scientific investigation there is no such thing as an accident. * * * It seems to us to be better in the interest of substantial justice to adopt the more practical construction of the language involved and follow its meaning as commonly understood. We think the weight of authority is to the effect that the term 'accidental' is equally descriptive of means which produce effects which are not their natural and probable consequences, as it is of means which are wholly unexpected."

In harmony with this reasoning the weight of judicial opinion has construed injuries similar to that *sub judice* as effected through "accidental means" and within the purview of policies in which such language is employed. *Mutual Life Ins. Co. of New York v. Dodge,* 11 *F.* 2d 486 (*C. C. A. 4th Cir.* 1926), *certiorari* denied 271 *U. S.* 677. In that case death resulted from paralysis caused by the administration of novocaine. See also 152 *A. L. R.* 1286 *et seq.;* 59 *A. L. R.*

1295-1296; 45 *C. J. S., Insurance,* § 938 (11), *p.* 1099; 29 *Am. Jur.* (*Insurance*), § 941, *p.* 714; *Note:* 166 *A. L. R.* 473.

We consider the foregoing interpretation of the term "accidental means," as employed in policies of insurance such as the one presently before us, to be based upon sound logic and in consonance with the common understanding of these words.

■ Applying these tests to the facts of the instant case, it becomes readily apparent that the death of the insured was caused by accidental means. There was in the act which preceded his death "something unforeseen, unexpected, unusual," to use the language of the opinion in the *Barry case, supra, viz.:* the application of the vaccine to one who had evidently a hypersusceptibility or allergy to the vaccine that was used. In other words he reacted in a wholly unanticipated way. It is true the doctor intended to apply the vaccine and the insured intended that he should apply it; but neither intended to apply it to a body of such evident hypersusceptibility. Death resulted from such mistaken application. It is common knowledge that people do not normally react in such a manner to such a common medical practice and death is not the natural and probable consequence thereof.

In this jurisdiction we have held that death by sunstroke was by accidental means. *Lower v. Metropolitan Life Ins. Co., supra.* In *Riker v. John Hancock Life Ins. Co., supra,* it was held that death caused by swimming was by accidental means. Recently in a workmen's compensation case, *Saintsing v. Steinback Company,* 1 *N. J. Super.* 259 (1949), affirmed, 2 *N. J.* 304 (1949), it was adjudicated that disability arising from a smallpox vaccination freely administered to an employee for the mutual benefit of employer and employee was an "accident" arising out of and in the course of his employment within the meaning of the applicable act.

From our examination of the authorities and the record before us, we are of the opinion that the death of the insured in the manner related was effected solely through accidental means and is therefore a compensable loss within the coverage provisions of the policy.

The judgment below is reversed and a judgment is directed to be entered in favor of the plaintiff and against the defendant for the amount claimed in the complaint.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—Justices CASE and OLIPHANT—2.