ACACIA MUTUAL LIFE INSURANCE COMPANY, Appellant,

v.

Mary Adele GALLEHER, Appellee.

No. 2153.

Municipal Court of Appeals for the District of Columbia.

Argued March 17, 1958.

Decided Sept. 10, 1958.

Jo V. Morgan, Jr., Washington, D. C., with whom Roger J. Whiteford, Washington, D. C., was on the brief, for appellant.

James G. Boss and Francis J. O'Hara, Jr., Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellee, Mary Adele Galleher, is the beneficiary under a policy of insurance issued on the life of her husband by appellant, Acacia Mutual Life Insurance Company. The policy sued on was for the sum

of $2,500 with double indemnity benefits in the event of death by accidental means. The latter provision, which forms the basis of this appeal, stipulates that an additional sum of $2,500 will be paid the beneficiary upon proof that the death of the insured resulted "directly and independently of all other causes, from bodily injury sustained solely through external, violent and accidental means." Under the terms of the policy, accidental death benefits are not payable if death resulted directly or indirectly from "illness or disease of any kind or physical or mental infirmity." Following payment of the face value of the policy, suit was instituted by the beneficiary to recover under the double indemnity provision. From an adverse judgment the insurance company has appealed.

The facts attending the insured's death are not in dispute. On January 30, 1957, he consulted his physician for medical treatment. His condition was diagnosed as a respiratory infection (tracheitis and bronchitis), and an injection of 600,000 units of penicillin was given him intramuscularly. Immediately after the injection the insured exhibited obvious signs of a serious adverse reaction to the penicillin. Subcutaneous and intravenous injections of adrenalin were administered and artificial respiration attempted following the development of symptoms associated with anoxia. Despite these emergency measures the insured died within five minutes. Both the attending physician and the coroner attributed death to anaphylactic shock due to penicillin. Expressed differently, death was caused by the insured's hypersensitivity to the protein in the antibiotic.

In bringing this appeal the insurance company contests its liability under the double indemnity provision principally on two grounds: (1) that death did not result from bodily injury sustained solely through accidental means, and (2) that death was indirectly related to illness or a disease. Believing the first point to be dispositive of the case, we limit our discussion to this contention.

The problem arises in the construction to be placed on the words "accidental means." A survey of the cases construing insurance policies employing these terms discloses a sharp conflict of authority. Appellee urges us to adopt the rule of law which holds that the means are accidental where the effect is unforeseen, unexpected, or not the probable consequences of the means which produce it. By way of evidentiary support for the application of this principle, appellee points out that the insured's hypersensitivity was unknown both to the deceased and his doctor and that on at least one prior occasion this physician had administered penicillin to him without a reaction. She further emphasizes the low fatality rate associated with the use of this antibiotic.[1]

The rule appellee advocates undoubtedly reflects the great weight of authority today in adjudications where death is the result of the insured's hypersensitivity to a drug or anesthetic normally harmless to the average person.[2] An examination of the cases

1. See Welch, Lewis, Weinstein, Boeckman, Severe Reactions to Antibiotics, A Nationwide Survey, 4 Jr. of AM & CT, No. 12, p. 800, 812 (Dec. 1957). This study, made by the U. S. Department of Health, Education, and Welfare, Food and Drug Administration, reported a fatality rate of about 9% in the comparatively few cases involving anaphylactoid shock reactions from penicillin.

2. See New York Life Ins. Co. v. Cooper, 10 Cir., 158 F.2d 257, certiorari denied 335 U.S. 819, 69 S.Ct. 41, 93 L.Ed. 374; Jensma v. Sun Life Assur. Co., 9 Cir., 64 F.2d 457, certiorari denied 289 U.S. 763, 53 S.Ct. 795, 77 L.Ed. 1505; Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 59 A.L.R. 1290, certiorari denied 271 U.S. 677, 46 S.Ct. 629, 70 L. Ed. 1147; Lee v. New York Life Ins. Co., 310 Mass. 370, 38 N.E.2d 333; Taylor v. New York Life Ins. Co., 176 Minn. 171, 222 N.W. 912, 60 A.L.R. 959; Korfin v. Continental Casualty Co., 5 N.J. 154, 74 A.2d 312. See, also 1 Appleman, Insurance Law and Practice, § 424 (1941).

in the District of Columbia, however, reveals that this jurisdiction is committed to the rule that makes a clear distinction between death that is accidental, though unintended and unforeseen, and death resulting from accidental means. See Railway Mail Ass'n v. Stauffer, 80 U.S.App. D.C. 278, 152 F.2d 146; Prudential Ins. Co. of America v. Beckwith, 67 App.D.C. 209, 91 F.2d 240; Levin v. John Hancock Mut. Life Ins. Co., D.C.Mun.App., 41 A.2d 841. As stated in Bernard v. Union Central Life Ins. Co., D.C.D.Mass., 117 F.Supp. 456, 458:

> " * * * Where the external act, which is the cause or means by which death is brought about, is the act which is intended and is performed exactly in the manner intended, then the death is not one effected by accidental means. * * * "

Applying this principle to the instant case, we hold that the death here was not one "effected by accidental means." The insured sought medical attention for a cough that had persisted for some time. The external act, or the means which brought about his death, was the injection of penicillin prescribed by the doctor. There is nothing in the record to indicate that the antibiotic was administered improperly or that the quantity given was excessive for cases of this character. No claim is in fact made by either side that there was anything accidental in relation to the injection itself. While the cases in this jurisdiction which distinguish accidental means and accidental results are factually dissimilar from the present, our conclusion finds support in the decisions of courts from several states which adhere to this distinction where like or similar policies have been construed in connection with hypersensitivity cases.[3]

Appellee has referred us to Raley v. Life & Casualty Insurance Co. of Tenn., D.C.Mun.App., 117 A.2d 110, a case in which this court held that death from sunstroke under a similar policy was death through accidental means. That decision followed the dissent in Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, which ultimately became the prevailing law throughout the country in sunstroke cases. The Raley case had the apparent effect of abolishing the distinction between death that is accidental and death resulting from accidental means. While the reasoning in that case is highly persuasive, we are compelled to hold that its effect is limited to sunstroke cases. In applying the opposing rule pronounced by the highest court in this jurisdiction, we are mindful that the earliest decision on the subject in the District indicated that the means need not be accidental.[4] In this respect that case was expressly overruled in Railway Mail Ass'n v. Stauffer, supra.

For the foregoing reasons the decision of the trial court is

Reversed with instructions to enter a judgment for appellant.

3. Order of United Commercial Travelers v. Shane, 8 Cir., 64 F.2d 55; Bernard v. Union Central Life Ins. Co., supra; Johnson v. National Life & Accident Ins. Co., 92 Ga.App. 818, 90 S.E.2d 36; John Hancock Mut. Life Ins. Co. of Boston v. Plummer, 181 Md. 140, 28 A.2d 856; Hesse v. Travelers' Ins. Co., 299 Pa. 125, 149 A. 96; Otey v. John Hancock Mut. Life Ins. Co., 120 W.Va. 434, 199 S.E. 596.

4. Patterson v. Ocean Accident & Guaranty Corporation, 25 App.D.C. 46.