467 A.2d 182

Cheryl LAMB et al

v.

## NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.

**No. 1934, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Nov. 2, 1983.

James D. McCarthy, Jr., Annapolis, for appellants.

Kevin A. Dunne, Baltimore, with whom were John A. Wolf and Ober, Grimes & Shriver, Baltimore, on brief, for appellee.

*Argued before* GILBERT, C.J., *and* ALPERT *and* BLOOM, JJ.

GILBERT, Chief Judge.

The interesting question posed to us by this appeal is whether under the law of the District of Columbia a murder is a death by accidental means within the ambit of a double indemnity[1] clause of an insurance policy.

Before we endeavor to discuss the matter we shall first set the factual scene from which the case arose:

Edna and Charles Lamb returned to their home in Anne Arundel County from an evening at Palmer's Restaurant in Landover, Maryland. The couple had been drinking and there apparently was an argument enroute to the home from the restaurant. We infer that the argument continued while the couple prepared for bed. Then, according to Edna Lamb, as she, "started to lay down and . . . [Charles] swung at . . . [her] . . . . [She] got up and set the clock. Turned off the lights, picked up two shells from somewhere. . . .

---

1. Double indemnity, according to Jim Oigan [*See,* University of Baltimore, The Law Forum, Vol. XI, No. 1, p. 21 (1981)], is the antithesis of double jeopardy. The latter precludes paying twice for the same thing, while the former requires such payment.

[Charles] kept running his mouth .... [Edna] went back over and put the shells in the gun that was underneath the bed. Closed the gun up, cocked it and picked it up and pulled the trigger .... [Charles] got quiet and ... [Edna] walked out of the room and went down and called the police." Subsequently, Edna entered a plea of guilty to second degree murder.[2]

Charles Lamb at the time of his death was a member of Teamster's Local Union 639 of Washington, D.C., and an employee of Safeway Stores, Inc. Incidental to membership in the Union was a life, accidental death and dismemberment group insurance policy issued by Northwestern National Life Insurance Company (Northwestern). The policy provided that:

"The Company will pay the appropriate accidental death or dismemberment benefits, subject to the terms and conditions of the Policy, if an Insured suffers one of the

---

**2.** Indeed, it would have been difficult to justify any other plea in light of her second telephone contact with the police. The dialogue is set out below:

"Edna Lamb—I would like to have an officer at 901 Selby Boulevard.

Wisniewski [P.S.O.]—What's the complaint miss? (pause) miss?

Edna Lamb—I committed murder.

Schmidt [Clerk]—Mrs. Lamb, what do you need an officer for? If you would tell us—

Edna Lamb—I committed murder.

Schmidt—If you would tell us what you need the officer for.

Edna Lamb—I just told you. I committed murder.

Schmidt—Mrs. Lamb, what is your problem?

Edna Lamb—I was being beaten and I committed murder. In self defense.

Schmidt—Mrs. Lamb—

Edna Lamb—I told you. You going to send an officer down here or not?

Schmidt—Mrs. Lamb, do you know you can be charged with making a false report?

Edna Lamb—Hey, I didn't make a false report.

Schmidt—What is the problem?

Edna Lamb—The problem is I committed murder in self defense. I wasn't going to be beaten again.

Schmidt—O.K. Is the person that beat you there now?

Edna Lamb—I would imagine so. He's up lying in bed dead.

Schmidt—What's your phone number Mrs. Lamb?"

losses specified because of an accidental injury ... with respect to Accidental Death and Dismemberment Insurance, 'accidental injury' means bodily injury effected solely through *external, violent* and *accidental means.*" (Emphasis added.)

The insurance contract also provided that, "This Policy is delivered in the state [sic] of the District of Columbia and is governed by its laws."

■ Maryland permits parties to a contract to agree as to the law which will govern their transaction unless there is no reasonable basis for the choice, or the choice of law violates a fundamental policy of the State. *Kronovet v. Lipchin,* 288 Md. 30, 43, 415 A.2d 1096, 1104 (1980).

■ Edna Lamb was the primary beneficiary under the policy, but she asserted no claim to the insurance proceeds. Had she done so, it would have been denied as a matter of law. *See generally* 27 A.L.R.3d 794; *see also Chase v. Jenifer,* 219 Md. 564, 150 A.2d 251 (1959).

The contingent beneficiaries, the children of Charles and Edna Lamb, claimed the basic death benefit of $20,000 and further demanded the payment of an additional $20,000 under the double indemnity-accidental death feature of the insurance contract. Northwestern paid the death benefit but balked at paying double indemnity. Instead, it filed in the Circuit Court for Anne Arundel County a bill of complaint for a declaratory decree seeking construction of the policy. The Circuit Court (Heise, J.) declared that the Lambs were not entitled to the accidental death benefit, and this appeal ensued.

The case of *Landress v. Phoenix Mutual Life Ins. Co.,* 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934), is the fountainhead from which flows all interpretations of what constitutes death by external, violent and accidental means. In *Landress* the Court, through Justice Stone, said that:

"The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily

injury, though unforeseen, is effected by means which are external and accidental . . . .

. . . .

This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is for injury resulting from accidental means."

Justice Cardozo in his dissent in *Landress* predicted that the majority's decision would cause ambiguity and uncertainty where none should exist. He wrote:

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.' Halsbury, L.C. in *Brintons v. Turvey*, L.R. [1905] A.C. 230, 233. Cf. *Lewis v. Ocean Accident & Guaranty Corp.*, 224 N.Y. 18, 21; 120 N.E. 56; *Innes v. Kynoch*, [1919] A.C. 765, 775. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U.S. 167, 174 [44 S.Ct. 90, 90–91, 68 L.Ed. 235 (1923)]; *Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 322 [48 S.Ct. 512, 515, 72 L.Ed. 895 (1928)]. The proposed distinction will not survive the application of that test."

Just as Justice Cardozo prophesized, there has emerged throughout the country two heterogeneous views as to whether a murder victim sustains a death by accidental means, even though there is no dispute that the victim was deliberately slain. One view, styled as the "reasonable foreseeability" rule, is that, "although an insured is killed or injured by another person, the death or injury is deemed to have been caused by accident or through accidental means where it was neither foreseen, expected, . . . [nor] anticipa-

ted by the insured." 49 A.L.R.3d 679. The majority of the courts do not perceive the slaying through the eyes of the murderer, which would undoubtedly reflect a wilful, deliberate, calculated act rather than an accident. Instead, they see the killing from the viewpoint of the victim to whom, absent misconduct from which he or she should have reasonably anticipated that he or she would be killed, the murder is unforeseen, unexpected and accidental within the terms of the insurance policy.

Applications of that perception are found in *Releford v. Reserve Life Ins. Co.,* 154 Tex. 228, 276 S.W.2d 517 (1955) (a wife killed her husband in a domestic argument and the jury found as a fact that the husband's "conduct was not such as to cause him reasonably to believe she would probably kill him . . . ."); *Tabor v. Commercial Casualty Ins. Co. of Newark, N.J.,* 104 W.Va. 162, 139 S.E. 656 (1927) (where insured approached his killer with "offensive words" and a challenge to fight but did not commit an act of violence, he had no reason to think the other person intended to kill him); *Great American Reserve Ins. Co. v. Sumner,* 464 S.W.2d 212, 49 A.L.R.3d 667 (Tex.Civ.App.1971) (insured killed by gunshot wound while engaging in coitus with assailant's wife); *Continental Casualty Co. v. Goodwin,* 182 Okl. 311, 77 P.2d 742 (1938) ("wife" killed the husband during a domestic dispute); *American Life Ins. Co. v. Morris,* 37 Ala.App. 438, 72 So.2d 414 (1953), *cert. denied,* 260 Ala. 693, 72 So.2d 418 (1954) (sixteen year old female slapped boyfriend in argument over another young woman, and the boyfriend then stabbed the sixteen year old causing her to bleed to death); *Lewis v. Insurance Company of North America,* 416 F.2d 1077 (5th Cir.1969) (question of whether an insured "could not have anticipated that he would be shot" by the woman with whom he lived and who he was assaulting was for the jury to decide); *American Accident Co. v. Carson,* 99 Ky. 441, 36 S.W. 169 (1896) (an insured was shot and killed without provocation or any misconduct); *Hutchcrafts' Ex'r v. Travelers' Insurance Co.,* 87 Ky. 300, 8 S.W. 570 (1888) (insured waylaid, robbed and assassinated).

*See also* 10 Couch, Encyclopedia of Insurance Law (2d Ed.1982) § 41:36; Vance (3d Anderson Ed.) Handbook on the Law of Insurance, § 181.

The State of Indiana has adopted a similar view with a slight modification. In *Freeman v. Commonwealth Life Ins. Co.,* 149 Ind.App. 211, 271 N.E.2d 177, (1971) *remittitur denied,* 259 Ind. 237, 286 N.E.2d 396 (1972), the Court rejected the "reasonable foresecability" rule, and instead said that the test is determined by whether the insured's death occurred as a result of his intent and volition and was actually expected, or anticipated as a result of his own acts. This modification appears to be more one of semantics than of substance. *See also Fulnettle v. North American Mut. Ins. Co.,* 43 Del. 505, 50 A.2d 614 (1946).

The second view espoused by the courts with respect to whether a death is accidental is whether the act is a deliberate, intentional and external one calculated to effect the death of the victim. Under that test the death is seen through the eyes of the murderer not the victim. Carrying that theory to its logical extreme, if a sniper wilfully shoots and kills a number of innocent victims, the slayings are not accidental and no recovery can be had. The same is true of a motorist who deliberately runs down a pedestrian thereby causing the victim's death. There can be no recovery because of the wilful, purposeful nature of the act. Courts so holding usually ground their decisions on recovery similar to that in *Bernard v. Union Central Life Ins. Co.,* 117 F.Supp. 456 (D.Mass.1954). There it is stated:

> "[W]here the external act, which is the cause or means by which death is brought about, is the act which is intended and is performed exactly in the manner intended, then the death is not one effected by accidental means." 117 F.Supp. at 458.

*See also Acacia Mutual Life Insurance Company v. Galleher,* 144 A.2d 550 (D.C.Mun.App.1958); *Smith v. Continental Casualty Company,* 203 A.2d 168 (D.C.1964); *John Hancock Mutual Life Insurance Co. v. Plummer,* 181 Md. 140, 28 A.2d

856 (1942); *New Amsterdam Casualty Co. v. Johnson,* 91 Ohio St. 155, 110 N.E. 475 (1914).

The Circuit Court in the instant case grounded its opinion in part on *John Hancock v. Plummer, supra.* There the Court of Appeals considered a matter wherein a 28 year old shipyard laborer died as a result of an anesthetic administered for the purpose of extracting teeth. According to the autopsy report, "the cause of death was asphyxiation due to the administration of nitrous oxide anesthetic." The Court said:

"It is beyond question that the death was accidental, for the term 'accidental' means that which happens without intention or design, and which is unexpected, unusual and unforeseen. (Citations omitted.) But the contract now before us does not provide for double indemnity in every case of accidental death, but only in certain cases where death results from bodily injury 'caused solely by external, violent and accidental means.'" 181 Md. at 142, 28 A.2d 856.

The Court expressly adopted the majority view in *Landress,* saying:

"We adopt the majority view that a means is not made accidental, within the terms of a policy providing for double indemnity in case of death resulting from bodily injury caused solely by external, violent and accidental means, merely because death results unexpectedly, where the means consists of a voluntary and intentional act occurring in the usual manner. Thus, in accordance with the weight of authority, we specifically hold that the death of an insured resulting from the proper use of an anesthetic while he is undergoing an operation is not covered by a policy insuring against death from bodily injuries caused solely by external, violent and accidental means."

The appellee and the trial court construe *Plummer* to preclude recovery under the double indemnity feature of the policy in the matter *sub judice* because the death was not occasioned by "external, violent and accidental" means.

Aside from the fact that *Plummer's* holding does not encompass factual patterns such as that present in the case at bar, we think it to be irrelevant. We so think because we are required to interpret the policy according to the law of the District of Columbia.

The courts of the District of Columbia have considered what is meant by the term "accidental death." *Acacia Mutual Life Insurance Co. v. Galleher, supra,* and *Smith v. Continental Casualty Co., supra.* In *Acacia* the court held that a death caused by hypersensitivity to penicillin was not "effected by accidental means." There was nothing in the record to indicate that the injection of penicillin was improperly administered or that the quantity prescribed was excessive.

*Smith* was concerned with an engineer on a railroad project who suffered an acute myocardial infarction. The attack from which he died about nine months later occurred while Smith was climbing up and down an embankment to inspect a railroad bridge. His ascent and descent into the excavation were incidental to his supervisory duties; he neither slipped nor fell, nor was he struck by any falling object. Under those circumstances the court declined to hold that the resulting apnea was an accident. *See also Prudential Insurance Co. of America v. Beckwith,* 67 U.S. App.D.C. 209, 91 F.2d 240 (1937); *Levin v. John Hancock Mutual Life Ins. Co.,* 41 A.2d 841 (D.C.Mun.App.1945); *Railway Mail Ass'n v. Stauffer,* 80 U.S.App.D.C. 278, 152 F.2d 146 (1945).

There does not appear to be any case in which the District of Columbia courts have considered whether a murder is a death by accidental means. On the contrary, the District's cases are limited to permissive injections for medical purposes which unfortunately, but not accidentally, resulted in death, and to non-accidental exertion in the normal and regular course of duty. In sum, all of the cases before the courts of the District of Columbia are factually inapposite.

We have neither been directed to nor found any case that flatly holds that the lawful beneficiaries of a murder victim

are precluded from recovering for his accidental death when he did not by his own misconduct, volition, or intent contribute to his demise. In sum, no case seems to have reached the result that because murder is intentional there can be no recovery under the accidental death feature of an insurance policy.

■ We think that, if confronted with facts similar to those of the instant case, the District of Columbia courts, notwithstanding their prior decisions, will rule the death of the insured to be external, violent, unintentional, involuntary and, hence, accidental within the meaning of death by accidental means.

Appellants also ask that we assess interest on the judgment "from the date of the death of Charles M. Lamb or from the date that demand was made on the insurance company." We observe that the trial judge did not rule upon the issue. Therefore, we shall remand the matter to the Circuit Court for entry of a judgment, with interest. In affixing interest the court should consider *Haynes v. Metropolitan Life Insurance Co.*, 262 Md. 255, 277 A.2d 251 (1971).

JUDGMENT REVERSED. CASE REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.