FRANKLIN C. HENDERSON *vs.* THE TRAVELERS INSURANCE COMPANY.

Norfolk.    January 17, 1928.— March 1, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Insurance*, Accident. *Evidence*, Matter of conjecture. *Words*, "Accident."

At the trial of an action of contract on a policy of accident insurance issued by the defendant to the plaintiff insuring him "against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through External, Violent and Accidental means," the plaintiff's evidence was that, shortly after using a swimming pool on a ship, into which he dove many times, on one or two occasions awkwardly and at one time straight so that he went to the bottom, and following several of which dives his nose and ears were full of water, he became ill of mastoiditis, which required an operation; and that his illness was due to germs received into his nose from the pool. The jury, in answer to a special question, found that the plaintiff's disability was not "caused by a germ or germs received into his system from the swimming pool" and thereupon the judge, subject to the plaintiff's exception, ordered a verdict for the defendant. The plaintiff contended that the jury should have been permitted to pass on the general question whether, as a result of some unintentional, unusual or accidental happening in connection with the plaintiff's diving in the pool, germs causing his illness were either introduced into his system from the pool or, being already in his system, were conveyed to a place where injury resulted. *Held*, that

(1) Upon the evidence the entrance of water into the ears and nose was a natural and usual result of the intended acts of the plaintiff;

(2) Eliminating the pool as the source from which the germs came, it was a matter of conjecture whether the plaintiff's injuries were effected through accidental means;

(3) The question submitted to the jury covered the only issue upon which, as the action was tried, the plaintiff could have recovered;

(4) The verdict rightly was ordered for the defendant.

CONTRACT upon a policy of accident insurance. Writ dated July 8, 1925.

In the Superior Court, the action was tried before *Mc-Laughlin*, J. Material evidence and a special finding by the jury are stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*M. J. Mulkern*, for the plaintiff.

*A. E. Bent*, (*L. C. Doyle* with him,) for the defendant.

SANDERSON, J. This is an action of contract on a policy of accident insurance issued by the defendant to the plaintiff insuring him "against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through External, Violent and Accidental means." The evidence tended to prove that the plaintiff, while on a cruise to the West Indies, used a swimming pool located on the deck of the vessel and while diving the water entered his nose and ear; that shortly thereafter he became ill and later acute mastoiditis developed. The plaintiff sought to prove that his trouble came from germs in the swimming pool and the medical experts called by him testified that in their opinion his illness was due to germs received into the plaintiff's nose from that source. At the close of the evidence the jury answered "No" to the question: "Was the disability of the plaintiff caused by a germ or germs received into his system from the swimming pool?" and thereupon the judge, subject to the plaintiff's exception, directed a verdict for the defendant and reported the case. No objection was made to the submission to the jury of this question.

The plaintiff now contends that the jury should have been permitted to pass on the general question whether, as a result of some unintentional, unusual or accidental happening in connection with the plaintiff's diving in the pool, germs

causing his illness were either introduced into his system from the pool or, being already in his system, were conveyed to a place where injury resulted. It was not disputed that the cause of his trouble was germ infection which had extended from the nasal passage through the eustachian tube to the middle ear. . If the evidence would have justified the jury in finding that the plaintiff's illness resulted from either of two accidental causes, the plaintiff might recover by proving that it was caused by one or the other, even though they might not be able to say which was in fact the cause. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. *Toy* v. *Mackintosh*, 222 Mass. 430.

The plaintiff dived into the pool many times; on one or two occasions he dived awkwardly, and at one time too straight and went to the bottom. He testified that on some of these occasions his nose and ears were full of water, but that he did not know after which of the dives he noticed this; that it was not uncommon for him in his boyhood to get water in his ears when swimming. On the afternoon after the last dive he began to feel an illness, which continued until he was required to have a mastoid operation. It was the opinion of medical experts called by the plaintiff that he developed a streptococcus infection from infected water in the pool; that a large number of virulent bacteria injected into the nose would account for his illness, and his condition was one that more commonly comes from submersion in a public bathing pool than from any other source; and it was possible that salt water in the mouth and nostrils might cause germs already there to become active, but that the plaintiff's illness was not caused and could not be explained that way because he had been perfectly well before and the onset of illness from germs already in the system would not be so sudden; that germs of the same kind may be about us all the time, being present at times in dust; that they may come from people coughing; and that a catarrhal infection or a head cold is sufficient to start the affection.

The plaintiff contends that the testimony tending to prove that a man might dive in such a manner that little or no water would enter the nostrils and that if, through some

inadvertence, a person strikes the water in an unusual manner so that his mind is not focused on keeping up the air pressure through the nostrils, he may get a considerable amount of water into them, when considered in connection with the plaintiff's testimony — as to his manner of diving — would justify the jury in finding that something unexpected and unintended happened, constituting an accident, and this happening resulted in his receiving into his nasal cavity an unusual quantity of water which conveyed the germs already there to the place from which they ultimately entered the mastoid cavity causing the plaintiff's injury and disability.

"Accident," as the word is used in the policy, is a more comprehensive term than negligence, and in its common signification the word means an unexpected happening without intention or design. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 33, 34. *United States Mutual Accident Association* v. *Barry,* 131 U. S. 100, 121. In the case last cited the court said: ". . . if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, 149, the insured died of spinal meningitis due to the presence of certain germs in the brain, which had come from the nose of the insured. The cause could have been found to be the inhalation of a nasal douche in a harder and more violent manner than usual. The question for decision in that case was whether such an inhalation could be found to have caused a bodily injury through external, violent and accidental means. The court held that "there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular act of inhalation, though harder and more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during

the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an accidental result of an external cause, but that cause itself must have been, not only external and violent, but also accidental."

The jury having found against the plaintiff on his main contention, the case falls within the principle of the decision in *Smith* v. *Travelers Ins. Co., supra.* It does not appear that the plaintiff in diving awkwardly or otherwise did not dive as he intended; nor does it appear that there was anything accidental in the manner of controlling his breath or taking other precautions when he went into the water. Upon the evidence the entrance of water into the ears and nose was a natural and usual result of the intended acts of the plaintiff. Eliminating the pool as the source from which the germs came, it is a matter of conjecture whether they were previously in the plaintiff's nose or mouth or entered his system from some unknown source after the baths were taken, or whether the salt water or something else caused them to become active or injurious, or whether his injuries were effected through accidental means.

The question submitted covered the only issue upon which, as the case was tried, the plaintiff could have recovered.

*Judgment for the defendant on the verdict.*