**BERNARD**

v.

**UNION CENTRAL LIFE INS. CO.**

Civ. Nos. 52–28, 52–29.

United States District Court
D. Massachusetts.

Jan. 5, 1954.

---

Merritt J. Aldrich, Boston, Mass., for plaintiff.

Bailey Aldrich, Choate, Hall & Stewart, Boston, Mass., for defendant.

FORD, District Judge.

These are two actions tried together seeking double indemnity benefits under two policies of insurance issued by the defendant, of which the plaintiff is the primary beneficiary. Policy No. 1134518 was an Ohio contract in the face amount of $5,000; policy No. 1423742 a Massachusetts contract in the face amount of $7,500. On the date of the death of the insured on November 13, 1950, both policies were in full force and effect. The single indemnities have been paid or accounted for. The sole question presented in each case is whether the death of the insured fell within the double indemnity provisions.

The Massachusetts policy provided double indemnity benefit,

"If the death of the insured ✳ ✳ shall have resulted directly, independently and exclusively of all other causes from bodily injury effected solely through accidental, external and violent means, and if such injury is evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning and internal injuries revealed by an autopsy) ✳ ✳ ✳

"Death is not a risk hereby assumed if it results directly or indirectly ✳ ✳ ✳

"(c) from any bodily or mental disease or infirmity."

The Ohio policy was the same except that it omitted the clause concerning the visible contusion or wound.

For some 15 years prior to November 1950 the insured had been suffering from arthritis, and for the past four months he had had an acute exacerbation of the arthritis. On November 8, he entered a hospital for observation, where it was discovered that he was suffering from chronic tonsilitis. The doctors felt that the tonsils were a focus of infection activating the arthritis and that if they were removed this condition would clear up. Except for the tonsilitis and the arthritis he was in good health. It was suggested that he have his tonsils removed by Dr. Arthur H. Martin and the insured agreed. At the request of the hospital he signed a printed form to the effect that he consented to anesthesia and whatever operations were deemed necessary or advisable. Above his signature a space was left for "exceptions", which space was left blank.

The insured was thereafter given a general anesthesia and his tonsils removed by Dr. Martin. The operation was complicated by more than average bleeding, and after the insured was returned to his room Dr. Martin ordered 3 cc. of a hemostatic serum, or blood coagulant.

Dr. Martin specified a preparation entitled Neohemoplastin, which the hospital had available.

On his return to his room following the operation, and prior to the injection of the Neohemoplastin, the insured had not recovered from anesthesia. He was a bit cyanotic, but in good condition. At this time a trained nurse pursuant to the instructions of Dr. Martin administered 3 cc. of Neohemoplastin into the muscle of his thigh by inserting a hypodermic needle 1½ inches through the skin and tissue. Upon the withdrawal of the needle the perforation sealed itself and could not be seen afterward. Five minutes later the insured became increasingly cyanotic; his pulse fell and he had great difficulty in breathing. He became very cyanotic; his tongue, throat, and parts of his face swelled, and before anything could be done he expired. The primary cause of death was edema of the glottis induced by an anaphylactic reaction to the Neohemoplastin. Expressing this another way, the insured was hypersensitive to the drug, resulting in extreme swelling of the throat, which cut off his breathing.

■ This hypersensitivity of the insured was of course unknown and unsuspected at the time of the administration of the drug and the result was entirely unforeseen and unexpected. While the hypersensitivity might have been determined by tests, I find that the drug had been used by doctors for many years in treatment of many thousands of patients without ill effects. It had also been so used by Dr. Martin about 100 times. The drug was made by a responsible concern. I find, if material, that there was no negligence in failing to test the insured, or in ordering the administration of the drug.

The point is made by the plaintiff that prior to the operation the insured was given a blood test and his clotting time was found to be within normal limits. Dr. Martin testified that tests of this character are not infallible and that it was part of his normal procedure where there was more than average bleeding to administer a coagulant. The plaintiff concedes that Dr. Martin was not guilty of negligence, and I find that what was done was normal and proper procedure.

Evidence was introduced that the insured was not told that he might be given a blood coagulant and never expressly consented thereto. I find, however, that he at least impliedly consented to whatever Dr. Martin found it advisable to do in the normal course and that this included the administration of the drug under the circumstances.

The principal contention of defendant is that, under the law of Massachusetts and Ohio applicable to the respective policies, the death of the insured was not the result of injury effected by accidental means.

■ The law of Massachusetts makes a clear distinction, in the application of clauses of this kind, between a death which is accidental in the sense that it was an unintended and unforeseen result and a death resulting from accidental means. Where the external act, which is the cause or means by which death is brought about, is the act which is intended and is performed exactly in the manner intended, then the death is not one effected by accidental means. Henderson v. Travelers' Insurance Co., 262 Mass. 522, 160 N.E. 415, 56 A.L.R. 1088; Smith v. Travelers' Insurance Co., 219 Mass. 147, 149, 106 N.E. 607, L.R.A. 1915 B, 872. In Lee v. New York Life Insurance Co., 310 Mass. 370, 38 N.E.2d 333, the facts were remarkably similar to those in the case at bar. The death of the insured resulted from respiratory failure caused by the injection of metycaine, a spinal anesthetic, administered to him when he was being prepared for an operation. Such a result from the injection of this anesthetic was unusual and unexpected, the chances of its occurrence being found to be so remote that doctors commonly regarded it as practically negligible. While recovery was allowed under the applicable law of Maine, the court point out, 310 Mass. at page 372, 38 N.E.2d 333 that under Massachusetts law, as set forth in the

Henderson and Smith cases, supra, this would not be considered a death effected by accidental means.

The cases cited by plaintiff contain nothing to show that Massachusetts law is other than has been stated. In Ballam v. Metropolitan Life Insurance Co., 295 Mass. 411, 3 N.E.2d 1012, 108 A.L.R. 1, there was clearly an accidental cause, the slipping and falling of insured on an oily floor. The only issue was whether the death was the result of this accident within the terms of the policy. In Dow v. United States Fidelity and Guaranty Co., 297 Mass. 34, 7 N.E.2d 426, it was pointed out that there was evidence that deceased's actions were not all intended to be done by him in the manner in which they were done. Barnett v. John Hancock Mutual Life Insurance Co., 304 Mass. 564, 24 N.E.2d 662, 126 A.L.R. 608, is another case in which there was clearly an accidental cause (an automobile accident) and the question was whether the subsequent death was to be attributed to that accident. Sargent v. Massachusetts Accident Co., 307 Mass. 246, 29 N.E.2d 825, involved a case where insured had disappeared while traveling alone by boat on a river in Northern Canada. The only question was whether there was sufficient evidence to justify a finding he met his death as a result of the upsetting of his boat in the dangerous rapids, and no contention seems to have been made that such a death, if proved, was not one brought about by accidental means. In none of these cases is there any indication that a death which is the result of voluntary and deliberate acts is to be considered as effected by accidental means simply because the result is unforeseen and unintended.

The law of Ohio on this point is clearly the same as that of Massachusetts. New Amsterdam Casualty Co. v. Johnson, 91 Ohio St. 155, 110 N.E. 475, L.R.A. 1916B, 1018 (death from heart dilation caused by insured's intentionally taking bath in cold water); Mitchell v. New York Life Insurance Co., 136 Ohio St. 551, 27 N.E.2d 243 (death from ruptured sigmoid caused by insured's administer-

ing to himself an enema voluntarily and in the manner intended); Blubaugh v. Lincoln Nat. Life Ins. Co., 84 Ohio App. 202, 82 N.E.2d 765 (hernia caused by effort of moving 350-pound oil drum into position, where court found that insured did voluntarily what he intended to do and in the manner intended).

In Hammer v. Mutual Benefit Ass'n, 158 Ohio St. 394, 109 N.E.2d 649, the narrowly divided Ohio court held that death resulting from sunstroke was effected by accidental means. But the court specifically purported not to overrule the line of cases already cited but to distinguish the sunstroke case on the basis that the means producing death was the action of an external physical force and not the voluntary act of the insured in exposing himself to the hot sun.

Such cases as Aetna Life Insurance Co. v. Brand, 2 Cir., 265 F. 6, Mutual Life Insurance Co. of New York v. Dodge, 4 Cir., 11 F.2d 486, and Lewis v. Ocean Accident Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129, cannot help plaintiff here. They express the law of numerous jurisdictions where no distinction is made between death produced by an accidental cause and one in which only the result is unforeseen and unintended. Cf. the Lee case, supra, where the Massachusetts court, finding that the law of Maine governed the case before it, reached a result contrary to what it would have reached by applying Massachusetts law. The reasoning of the courts of these jurisdictions has not persuaded the courts of Ohio and Massachusetts. It is the law of those states which must be followed in deciding the case here presented.

Plaintiff cites Shepherd v. Midland Mutual Life Insurance Co., 152 Ohio St. 6, 87 N.E.2d 156, as authority for the proposition that there is a presumption of accidental death applicable here. But the court in that case held merely that where it was shown that death was caused by a violent external force, but there was no evidence as to the means by which the force was applied, the means would be presumed to be accidental rath-

er than suicide or the deliberate attack of another person. This has no application here where there is no doubt as to the means by which death was brought about.

In the present case there was nothing accidental about the means by which death was effected. The injection of the Neohemoplastin was knowingly and deliberately ordered by the doctor and made by the nurse. Everything done was intended and performed exactly in the manner in which it was intended to be done. There was no negligence. There was nothing in the acts performed which was unintended or unexpected. It was only the sudden and unfortunate result of these acts which was unforeseen and unintended. Under the applicable law of Massachusetts and Ohio, the death of the insured was not one resulting from bodily injury effected through accidental means, within the meaning of the double indemnity provisions of the policy in suit.

Judgment in both actions will be entered for defendant.