## ECONOMY MILLS OF ELWELL, INC., *v.* MOTORISTS MUTUAL INSURANCE COMPANY.

1. INSURANCE—COMPREHENSIVE LIABILITY POLICY—ACCIDENT.
   "Accident", within meaning of policies of accident insurance, is anything that begins to be, that happens, or that is a result, which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby, being that which takes place without design or intentional causation by the person injured, an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

2. SAME—CONTRACTS—INTERPRETATION.
   Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and proper sense.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29A Am Jur, Insurance § 1164.
[2] 29 Am Jur, Insurance § 245 *et seq.*
[3, 4] 29A Am Jur, Insurance § 1589 *et seq.*

3. SAME—GENERAL LIABILITY POLICY—ACCIDENT—INJURY—DESTRUC-
TION OR LOSS OF USE OF PROPERTY—CRANBERRY SEED BEANS—
DEFENSE OF ACTION.

> Failure of bean plants, grown by farmers from cranberry seed
> beans furnished by seed dealer, to grow to maturity because
> they were unsuited to Michigan growing season, resulting in
> waste of farmers' efforts and loss to them of use of their land
> during the unsuccessful growing season, *held*, an "accident"
> within the meaning of an insurance policy insuring the seed
> dealer against liability for damages because of injury to or
> destruction of property, including loss of use of the property,
> caused by accident and agreeing to defend a suit alleging such
> injury, the failure to mature being unforeseen, unexpected, and
> unintended.

4. SAME—ACCIDENT—LOSS OF USE.

> Loss of use of farmers' land caused by failure of bean plants
> grown on the land to mature because they were unsuited to
> Michigan growing season, *held*, a "loss of use of property"
> within the meaning of an insurance policy insuring bean seed
> seller against liability for damages because of injury to or
> destruction of property, including loss of use thereof, caused
> by accident, the accident being the unexpected failure of the
> plants to mature.

Appeal from Gratiot; Corkin (Leo W.), J. Sub-
mitted Division 3 April 5, 1967, at Grand Rapids.
(Docket No. 2,665.)   Decided November 29, 1967.
Leave to appeal granted February 20, 1968. See 380
Mich 758.   Appeal dismissed by stipulation August
6, 1968.

Complaint by Economy Mills of Elwell, Inc.,
against Motorists Mutual Insurance Company, seek-
ing a determination that a policy of insurance issued
by defendant, insuring against loss "caused by acci-
dent", afforded coverage to plaintiff in actions
brought against plaintiff as the result of the sale
of bean seeds unsuitable for growing in Michigan.
Judgment for plaintiff. Defendant appeals. Af-
firmed.

*Fortino, Plaxton & Moskal,* for plaintiff.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendant.

Holbrook, J. Plaintiff corporation was in the general business of a grain elevator, which included the sale of grain and seeds. At all times herein the plaintiff was protected against liability arising out of damage to property caused by accident under an insurance contract with the defendant. This policy provided in part as follows:

| "Coverages | Limits of Liability |
|---|---|
| "C Property Dam- | $10,000. each accident |
| age Liability— | $25,000. aggregate operations |
| Except Automo- | $25,000. aggregate protective |
| bile | $25,000. aggregate products |
| | $25,000. aggregate contractual" |

Defendant insurance company in the policy agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

In the exclusions part of the policy the following provision applies:

"This policy does not apply: * * *
"(f) under coverage C, to injury to or destruction of * * * (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

Under the heading, "conditions," the policy defines the term "products hazard" as follows:

"The term 'products hazard' means

"(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured or on premises. for which the classification stated in division (a) of the declarations or in the company's manual excludes any part of the foregoing."

The defendant insurance company in section 2, of the heading "insuring agreements" of the policy also agreed as follows:

"Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

While this policy was in effect, plaintiff sold certain cranberry seed beans to various individuals. Two of such customers started suit against plaintiff claiming that plaintiff breached certain implied warranties involved in the sales of said seed beans. The claimed product defect as alleged in the complaints of these 2 purchasers was to the effect that the beans were of a type not suitable to the growing season in Michigan, and as a result, even though properly planted and cared for did not flower, pod, and mature. The damages claimed in these suits included various items of loss sustained in purchasing, planting, and cultivating a bean crop that did

not mature, including the loss of use of the land for *that* year's growing season.

The plaintiff called upon defendant insurance company to defend these suits and upon defendant's refusal commenced suit in the Gratiot county circuit court for a declaratory judgment requiring defendant insurance company to defend the suits pending against plaintiff.

Plaintiff and defendant stipulated to an agreed statement of facts which stated among other things "assuming the allegations in those complaints [against plaintiff] are true, the events complained of came about without the consent, knowledge, concert, acquiescence, or connivance of the plaintiff." That the defendant in this action was given proper notice of the suits but refused to defend plaintiff against them, was also a part of the stipulated facts.

Plaintiff conceded in the trial court that under the terms of the policy there was no liability on the part of the defendant for the purchase price of the seed beans.

A pretrial conference was held and thereafter plaintiff moved for a summary judgment because there was no genuine issue of facts raised by the pleadings. The matter came on to be heard and defendant presented testimony.

After the hearing, the trial judge rendered a comprehensive and thorough opinion[1] concluding with the finding "that the defect in the seed beans caused accidental injury to property for which the insurer could be liable and that under the terms of the policy it has an obligation to defend the claimants' actions on behalf of its insured."

Judgment was entered in accordance with the opinion on September 7, 1966. Defendant has appealed and presents one issue for review: *Is a claim*

---

[1] 13 Wayne Law Review, No 1, p 2, A Note from the Bench.

*for damages against a seller for the loss suffered by a farmer by failure of seeds to mature as impliedly warranted, a claim for an accidental injury to property as is covered by a policy of insurance which protects the seller against claims for injury to property by accident arising out of a warranty of goods sold?*

The fact that there was an implied warranty[2] made by plaintiff to the 2 purchasers of the seed beans, that the seeds would grow and mature, the purpose for which they were purchased, appears not to be in contest. However, defendant-appellant maintains that under the facts in this case there was no accident whereby there was injury to or destruction of property, including the loss of use thereof.

First, it must be determined if the facts justify the finding of the trial court that an accident occurred. Concerning this matter, the trial judge in his opinion stated as follows:

"Although the word 'accident' is of great importance in several provisions of the policy, no definition of what is meant by the use of the word appears in the policy. Presumably the word is used in the same sense that courts have found to be applicable in other products liability policies.

"*Guerdon Industries, Inc.,* v. *Fidelity & Casualty Company of New York* (1963), 371 Mich 12, 18, adopts with approval the definition of accident as found in *10 Couch on Insurance* (2d ed), § 41.6, p 27 which states:

"'An "accident," within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes

---

[2] PA 1962, No 174, § 2315, CL 1948, § 440.2315 (Stat Ann 1964 Rev § 19.2315).

place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'

"In the instant case the claimants against the insured did not foresee or anticipate that they were planting seed beans which would not mature, with the result that their labor went for naught and they were not able to reap the benefits of growing a crop on this land for a growing season. Likewise there is no question but what the insured sold these beans with the expectation that they would mature, and there was no design or intentional causation on its part that the beans would fail to mature. While it may be that there is a possibility that seed beans may not germinate and result in a bean crop, it is not naturally to be expected and is something out of the usual course of events."

We agree with the findings of the trial judge and conclude that under the definition of an accident as found in the *Guerdon Industries, Inc., Case, supra,* that the defect in the seed beans causing failure of the beans to mature was unforeseen, unexpected, and unintended and constituted an accident.

Next, we turn to the question, did the accident cause injury to or destruction of property, including the loss of use thereof? Defendant asserts that it did not and in support of its position cites 2 cases. First, the case of *Bundy Tubing Company* v. *Royal Indemnity Co.* (CA6, 1962), 298 F2d 151, which involved the sale of defective copper tubing by Bundy to a purchaser and used in a radiant heating system in a home. The tubing leaked and damaged household furnishings. Royal admitted liability for the damage to the furnishings and offered to pay for such loss. Other than for this loss, Royal denied

liability and refused to defend Bundy on the ground
that the exclusionary clause of the policy excluded
coverage.[3]   The principal damage claimed by the
purchaser was for the cost of removing concrete
flooring in which the defective tubing had been em-
bedded, and the laying of new concrete in which to
place the new tubing.   As to this, Royal contended
that the *old concrete had not been damaged in any
accident.*   The court in disposing of the matter, stat-
ed in the majority opinion as follows:

"In our opinion, property was damaged by the
installation of defective tubing in a radiant heating
system which caused the system to fail and become
useless.   A homeowner would never have such equip-
ment installed if he knew that it would last only a
very short time.   A home with a heating system
which did not function would certainly not be suit-
able for living quarters in the wintertime.   *The
market for its sale would be seriously affected.*

"The failure of the tubing in the heating system
in a relatively short time was unforeseen, unexpect-
ed, and unintended.   Damage to the property was
therefore caused by accident."   (Emphasis supplied.)

It appears to this Court that *Bundy, supra,* sup-
ports plaintiff instead of defendant in the instant
case.   Defendant, Motorists Mutual Insurance Com-
pany, herein asserts that the land of the claimants
was not injured or destroyed just as Royal asserted
in *Bundy, supra,* that the old concrete was not in-
jured or destroyed.   The court in *Bundy, supra,* de-
cided that the accident caused a loss in market value
of the home and this was sufficient.   In our case, it
may be said that the market value of the fields in
which the defective seeds were planted for the
season in question was seriously affected by the acci-
dent and therefore constituted injury to property.

---

3 This exclusion clause is the same as in our instant insurance policy.

Defendant cites the very recent case of *E. K. Hardison Seed Company* v. *Continental Casualty Company* (1966), 56 Tenn App 644 (410 SW2d 729) in support of its position. It appears therein, that the seed company delivered the seeds ordered which were productive; however, the quality of the crop was not as warranted. The opinion in the *Hardison Case* stated in part:

"There is no suggestion that Frostreat did not get the seed it ordered, as in *American Employer Co.* v. *Knox-Tenn. Equipment Co.* [(1963), 52 Tenn App 643 (377 SW2d 573)], Knox-Tenn. did not get the size bit it ordered."

643 (377 SW2d 573)], Knox-Tenn. did not get the seed they ordered, *i.e.,* seed that was fit for planting in Michigan with the Michigan season in mind. The important distinction is that in the *Hardison Case, supra,* the purchaser obtained the proper seed except for quality, whereas in this case, the seed ordered was not the seed delivered. The *Hardison Case, supra,* not being factually analogous is not applicable.

Next, defendant cites the case of *Hauenstein* v. *Saint Paul-Mercury Indemnity Company* (1954), 242 Minn 354 (65 NW2d 122) which involved the sale by plaintiffs of defective plaster under a policy of insurance whereby defendant insured plaintiffs against any loss resulting from liability for damages because of injury to property including loss of use thereof, caused by accident, but excluding coverage as to goods or products manufactured or sold by insured. The trial court denied relief to the plaintiffs, but on appeal the supreme court of Minnesota held that property damage to buildings of consumers who purchased the plaster from plaintiffs (caused by the application of defective plaster) was "caused by accident" within the meaning of the in-

surance contract. And there was liability on that basis even though there was no liability on the theory that the plaster itself had upon its application ceased to be a product handled and distributed by the insured, within contemplation of the exclusionary clause. The supreme court in its opinion stated in part as follows:

"The principle involved here is illustrated by the Minnesota case of *Heath* v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, 126 Minn 470 (148 NW 311, LRA 1916E, 977), in which large quantities of sand were deposited on plaintiff's land. Plaintiff's property had not been intrinsically damaged, but the external deposit of sand impaired the value of the land as long as its presence remained. This, the court said, was property damage for which recovery could be had, to be measured by the diminution in value of the land, or by the loss of use plus the cost of removal of the sand, whichever was less.

"There is no doubt that the property damage to the building caused by the application of the defective plaster was 'caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."[4]

The *Hauenstein Case, supra,* likewise fails to support defendant's position. It supports the ruling in *Bundy, supra,* that an accident that causes a loss in market value to property is injury to or destruction of property. The *Heath Case, supra,* referred to in

---

[4] See *Piotrowski* v. *Prudential Ins. Co. of America* (1931), 141 Misc 172 (252 NYS 313); *Henderson* v. *Travelers' Ins. Co.* (1928), 262 Mass 522 (160 NE 415, 56 ALR 1088); Black Law Dictionary (3d ed), p 23; 1 Words and Phrases, Accident, p 513.

*Hauenstein* further indicates the loss of use of property constitutes injury to property.

The last statement merits further consideration. Under the insurance policy in question, defendant agrees "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *injury to or destruction of property, including the loss of use thereof, caused by accident.*"  (Emphasis supplied.)

In *Kingsley* v. *American Central Life Ins. Co.* (1932), 259 Mich 53, 55, the Court quoting *Imperial Fire Ins. Co.* v. *Coos County* (1893), 151 US 452, 463 (14 S Ct 379, 38 L ed 231) stated:

" 'Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' "

To us the clause determining liability of defendant insurance company is plain and unambiguous; it means just what it says, *i.e.,* "injury to or destruction of property including loss of use thereof."

We conclude that the loss of use of property is qualitative of satisfying the conditions of the policy. Any other interpretation would give this clause no meaning.

The use of land for the purpose of growing a crop during a season is property that has market value, it can be sold and encumbered and the loss thereof by accident is injury to or destruction of property.

We find that the loss in market value of the fields in which the beans were planted and failed to mature in this case is sufficient, as determined in *Bundy, Hauenstein,* and *Heath, supra,* to qualify under the terms of the instant insurance policy.

The declaratory judgment requiring defendant insurance company to defend plaintiff in the suits pending against it is affirmed.

Costs to plaintiff.

BURNS, P. J., and R. M. RYAN, J., concurred.