[No. A080108. First Dist., Div. Five. June 9, 1999.]

MELVIN HENDRICKSON et al., Plaintiffs and Appellants, v.
ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS et al.,
Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, parts II and III of this opinion are not certified for publication.

**COUNSEL**

Smith, Helenius & Hayes, Kevin J. Smith, Christopher A. Helenius; Dugan Barr & Associates and Dugan Barr for Plaintiffs and Appellants.

Bullivant Houser Bailey, Douglas G. Houser, Beth Skillern and Robert E. Asperger for Defendants and Respondents.

**OPINION**

**HANING, J.**—Melvin and Virginia Hendrickson, individually and doing business as Crown Nursery (collectively appellants), appeal a summary judgment in favor of their insurers, Zurich American Insurance Company of Illinois and Zurich Insurance Company (collectively Zurich), in appellants' action against Zurich for failure to defend and indemnify them in a third party action. We reverse.

### BACKGROUND

Appellants operate a commercial nursery which produces and sells strawberry nursery stock to third party growers. A number of growers who purchased strawberry plants from appellants sued them, alleging that an aerially sprayed herbicide which causes systemic damage to strawberry

plants drifted onto appellants' property and stock of strawberry plants, which appellants then negligently sold to the growers.

The growers' first cause of action for negligence alleges that appellants sold them the damaged plants even though appellants knew or should have known that the herbicide spray causes systemic damage to strawberry plants such that when replanted they die or become stunted. The growers' second cause of action for breach of warranty alleges that appellants breached an implied warranty that the plants were of good and merchantable quality. The growers' third cause of action for negligence alleges that when they began to suspect that appellants' plants were stunted and sought appellants' advice, appellants negligently advised them not to replant their fields with unaffected plants, and informed them that the stunted plants would eventually produce a "near normal" yield. In reliance thereon, the growers "for the most part" refrained from replanting their fields with healthy plants and were damaged by a loss of production from the stunted plants.

Appellants were insured under two of Zurich's liability policies for the period during which the incident occurred: (1) a primary policy which provides coverage for bodily injury and property damage; and (2) an excess policy which provides excess coverage over the primary policy.

*Primary Policy*

Appellants' primary policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . . caused by an 'occurrence.'" An "'occurrence' [is defined] as an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "'Property damage' [is defined as]: [¶] a. Physical injury to tangible property, including all resulting loss of use of that property; or [¶] b. Loss of use of tangible property that is not physically injured."

*Excess Policy*

Appellants' excess policy generally incorporates the primary policy's insuring language, providing excess coverage for claims covered under the primary policy, and primary coverage for claims the primary policy does not cover. It provides that "[¶] 1. When **primary insurance** or **other insurance** is available, **we**: [¶] a. have the right and opportunity to defend, but not the obligation; and [¶] b. can defend any claim or suit which may create liability under this policy. [¶] 2. **We** will assume settlement or defense of claims or suits where: [¶] a. the limits of liability of the **primary insurance** are

exhausted by payment of claims; or [¶] b. damages are sought for . . . **property damage** . . . claims or suits, covered by this policy, and for which no **primary insurance** or **other insurance** applies." (Boldface in original.)

After Zurich refused to defend appellants in the growers' action, appellants filed the instant action against Zurich, alleging generally that Zurich breached its obligations under the policies to defend and indemnify them against the growers' claims. The parties filed cross-motions for summary judgment on the issue of Zurich's duty to defend against the growers' claims, and alternatively moved for summary adjudication of issues.

Zurich's motion for summary judgment was based, in relevant part, on its contention that: (1) the growers' complaint does not allege covered property damage; (2) appellants' potential liability is purely contractual; and (3) aircraft exclusions in both policies apply to the growers' claims.

The court denied appellants' motion and granted summary judgment for Zurich, ruling that (1) appellants' liability to the growers is based entirely upon its contractual duties; and (2) Zurich's policies do not cover the damages sought in the growers' action.

## DISCUSSION

■ Appellants contend the claims asserted in the growers' action establish a potential for coverage under Zurich's policies, giving rise to a duty to defend. They argue that the policies covered the growers' action under the provisions concerning liability for property damage, and that the growers' complaint sounds in tort rather than contract, as Zurich claims.

A defendant moving for summary judgment has the burden of negating an essential element of the plaintiff's cause of action, or establishing a complete defense thereto. (Code Civ. Proc., § 437c, subd. (*o*); *Campanano* v. *California Medical Center* (1995) 38 Cal.App.4th 1322, 1327 [45 Cal.Rptr.2d 606].)

■ A liability insurer owes a broad duty to defend its insured against claims which create a potential for indemnity, and must defend a suit which potentially seeks damages within the policy coverage. The duty to defend is broader than the duty to indemnify, and an insurer may owe a duty to defend its insured in an action in which no damages are ultimately awarded. Whether the insurer owes a duty to defend is determined by comparing the factual allegations of the complaint and the extrinsic facts known to the insurer with the terms of the policy. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Gray*

v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].) If a single issue exists which is even potentially within the policy coverage, the insurer has a duty to defend the insured against a third party action in its entirety. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 48 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured. (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].)

The interpretation of an insurance policy is a question of law which we review de novo. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) Like all contracts, an insurance policy is interpreted to effectuate the mutual intent of the parties. That intent is to be inferred, if possible, solely from the provisions of the policy itself. (Civ. Code, §§ 1636, 1639; *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) The clear and explicit meaning of contract provisions, interpreted in their ordinary and popular sense, controls our interpretation, unless used by the parties in a technical sense, or unless a special meaning is ascribed to them by usage. Courts apply the meaning a layperson would ascribe to the clear and unambiguous language of an insurance contract. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

Our interpretation of the subject policies requires that we first examine the insuring clauses (*Waller, supra,* 11 Cal.4th at p. 16), which are interpreted broadly to protect the objectively reasonable expectations of the insured. (*Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th at p. 667.) Under the primary policy Zurich agreed to provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies . . . caused by 'an occurrence.'" " 'Occurrence' [is defined as] an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Appellants contend the covered occurrences under the policies were (1) their negligent sale of damaged strawberry plants to the growers, and later (2) their negligent advice to the growers, which caused them to refrain from removing the damaged plants and replacing them with healthy ones. Zurich has ignored the occurrence issue. On appeal it argues only that (1) the growers do not allege any covered property damage, (2) appellants' liability is purely contractual and therefore not covered, and (3) the aircraft exclusions in the policies apply to the growers' claims.

## I.

Appellants contend the policies potentially covered the growers' action under the coverage for property damage. As noted, the policies define "property damage," in relevant part, as: "a. Physical injury to tangible property, including all resulting loss of use of that property; or [¶] b. Loss of use of tangible property that is not physically injured." The clear and unambiguous meaning of this definition is that loss of use of tangible property is distinct from physical injury to the property in question and is not limited to losses caused by or relating to some physical injury of the property. (See *Borg* v. *Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448, 456-457 [54 Cal.Rptr.2d 811] (*Borg*).)

In essence, the growers' first cause of action alleges that appellants' negligent sale of defective plants resulted in lost strawberry production. The parties agree that the damaged plants do not themselves constitute property damage under the policy. However, appellants urge that the growers' complaint can reasonably be construed as alleging that the defective plants caused "both physical injury to tangible property and [a] loss of use of tangible property which is not physically injured," for which the policies provide coverage. Zurich rejoins that appellants do not allege a loss of use of property, but claim only economic losses associated with the property, which does not constitute property damage.

In support of their loss of use argument appellants rely on *Borg, supra,* 47 Cal.App.4th 448, where the insured purchased residential property which included a deck that encroached on an adjoining vacant lot. Thereafter, the third party claimant purchased the adjoining lot and sued the insured for damages and an injunction to remove the encroaching deck. He alleged that the deck's encroachment rendered his property not saleable and claimed damages for loss of use of the property encroached upon. (47 Cal.App.4th at p. 452.)

The policy in *Borg*, as here, defined "loss of use" as limited to loss of use of tangible property not physically injured. *Borg* stated, "This term is meant to exclude intangible economic interests and property rights. It has been defined in its plain and ordinary sense as limited to property having physical substance apparent to the senses, including real estate. [Citations.]" *Borg* concluded that the third party complaint created a potential for coverage for loss of use damage by alleging that the insured's deck encroached upon and resulted in a loss of use of his neighbor's real property. (*Borg, supra,* 47 Cal.App.4th at pp. 457-458.)

Although we have found no California cases dealing with loss of use of fields in which defective crops were planted, cases outside of California are instructive. In *Economy Mills of Elwell, Inc.* v. *Motorists Mut. Ins. Co.* (1967) 8 Mich.App. 451 [154 N.W.2d 659, 660-661] (*Economy Mills*), the insured, a seller of grain and seeds, was protected under a policy in which the insured agreed to pay sums which the insured was legally obligated to pay as damages due to injury to or destruction of physical property, including the loss of use thereof, caused by accident. While the policy was in effect, the insured sold various Michigan growers cranberry seed beans. The growers sued the insured claiming breach of implied warranties involved in the sale of the seed beans which were allegedly defective because they were not of a type suitable to Michigan's growing season and therefore, although properly planted and maintained, did not flower, pod and mature. The growers claimed damages for various items of loss suffered in purchasing, planting and cultivating a bean crop that did not mature, including the loss of use of the land for that year's growing season.

*Economy Mills* first determined that the failure of the seed beans to mature was unforeseen, unexpected and unintended and therefore constituted an accident under the policy. It then held that the loss of use of land for the purpose of growing a crop constituted property damage under the policy's loss of use clause. (154 N.W.2d at pp. 661-662, 664.)

In *Safeco Insurance Company* v. *Munroe* (1974) 165 Mont. 185 [527 P.2d 64, 66, 68-69] the insured was protected under a policy covering loss of use of property resulting from injury to or destruction of tangible property caused by an occurrence. The third party complaint alleged that the insured mistakenly delivered the wrong type of wheat seed, resulting in crop loss and loss of use of the wheat fields for the crop season. The Montana Supreme Court held that if as a result of receiving the wrong seed little or no wheat grew, the growers would have received little or no compensation due to having lost a crop and would thereby have suffered a loss of use of their lands, constituting property damage under the policy.

Here, the growers' complaint may reasonably be construed as alleging that as a result of appellants' negligent delivery of defective plants, the growers suffered a loss of strawberry production, and thereby a loss of the use of their land. The policies in this case expressly state that "[l]oss of use of tangible property that is not physically injured" constitutes "property damage." Thus, we conclude that the growers' action presents a potential for coverage which requires a defense. Contrary to respondents' arguments, the alleged loss of profits or diminution in property value are not solely economic losses, but damages because of property damage, and therefore

constituted alternative measures of any property damage allegedly sustained. (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 93 [52 Cal.Rptr.2d 690].)

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed. Costs to appellants.

Jones, P. J., and Stevens, J., concurred.

A petition for a rehearing was denied July 1, 1999, and respondents' petition for review by the Supreme Court was denied September 15, 1999.

---

*See footnote 1, *ante*, page 1084.