Cowin, J.
INTRODUCTION
This is a declaratoiy judgment action in which the plaintiff seeks coverage under a dwelling policy (the policy or the insurance policy) issued by the defendant Insurance Company of America (the insurance company or the insurer) to James and Barbara Antosca (the homeowner or the insured) for a home on the insured premises. This matter is before the Court on the cross-motions for summary judgment of each parly. The defendant’s motion for summary judgment is allowed and the plaintiffs cross-motion for summary judgment is denied for the reasons discussed below.
BACKGROUND 1. THE LITIGATION
The following facts appearing in the summary judgment record are not disputed. At the time that is relevant to this matter, the policy was in effect for a home that James Antosca (Antosca) a Massachusetts resident, was building on Upper Captiva Island, Florida. At the time of issuance of the policy, construction of the house was not complete. In January 1991, Antosca traveled from Massachusetts to Florida to stay at the insured premises. Antosca was in the company of several other men including the plaintiff Christopher Braga (Braga), who accompanied Antosca to Florida to assist him in the construction of his home and to enjoy the Florida weather and leisure activities. On April 11, 1991, while the plaintiff was in Florida under these circumstances, he was driving a golf cart in which another indi-vidual, one Paul Adams (Adams), was injured. (The cart was owned by a third party.) The accident occurred on Upper Captiva Island but not upon the insured premises. In January 1993, Adams filed a personal injury suit against Braga (plaintiff in the instant case) in the Plymouth Superior Court. A judgment for Adams entered against Braga on November 15, 1993. Braga now seeks a declaratory judgment that INA is obligated to satisfy this judgment. INA denies that it is obligated to pay the judgment.
INA disclaimed coverage for the reason that the plaintiff did not meet the definition of an “insured” as that term is defined in the policy. The named insured on the policy is James and Barbara Antosca. The definition of an “insured” in the policy appears in Section IX 1:
(a) The named insured stated in the Declarations of this policy;
(b) if residents of the named insured’s household, his spouse, the relatives of either, or any other person under the age of 21 in the care of any insured: . . .
The plaintiff claims that he qualifies as an “insured” within the meaning of the above definition because at the time of the accident in question he was a resident of the named insured’s household; he was under the age of 21; and he was in the care of the named insured, Antosca. The defendant concedes that the plaintiff was under 21 at the time of the accident but contests that the plaintiff was either a resident of the named insured’s household or in the care of an insured.
2. SUMMARY OF FACTS
The following facts are taken from the papers of the parties and are not disputed. The plaintiff and the homeowner in this case did not know each other until 1990 when they were introduced by one Philip Dimarzo (Dimarzo). Dimarzo was a carpenter who had employed Braga from 1989 to 1991 on several jobs as a helper. Dimarzo was planning to accompany Antosca to Florida in 1990 and asked Braga in January 1990 if Braga wanted to go to Antosca’s home in Florida to “hang out” and help on construction of the house. Braga and Dimarzo accompanied Antosca to Florida in 1990 and stayed there for approximately ten weeks.
In 1991, Antosca, Braga, Dimarzo and others returned to the still uncompleted house in Florida for *645 about twelve weeks. In 1991, Antosca did not pay a specific salary to Braga or to any of those helping with the house. Antosca did provide all of them with transportation to and from Florida, a place to stay (that is, the floor of the incomplete house), meals and spending money. Braga slept in a sleeping bag on the floor “in a corner” of the first floor.[1] Braga received approximately $250.00 spending money in 1991.[2] Antosca provided no health insurance, life insurance or clothing to the plaintiff.
Braga was expected to work on the construction of the Florida house as needed. He was to help out by carrying wood and tools, bringing “stuff’ to the workers for the house that was being built. He did not do any actual carpentry work. He worked 15-25 hours per week in 1991.[3] He understood that if he did not help out he would not be able to remain in Florida, that is, he would not receive transportation, lodging, food and spending money in return for doing nothing.
The house was on an island in Florida. Transportation to and from the island was by boat. Antosca owned a boat; Braga had to obtain Antosca’s permission to leave the island and Braga could not leave the island without being in the company of Antosca or another responsible adult. Braga made few trips off the island during the two periods in which he lived there.
Braga never lived anywhere but Taunton Massachusetts where he resided with his mother. He intended to return to Massachusetts after his stay in Florida and did not intend to remain in Florida. He did not change his mailing address, obtain a Florida driver’s license, or register to vote in Florida. The only belongings that Braga brought with him from Massachusetts to Florida were some clothes. He did not have any guests visit him in Florida.
Before leaving for Florida in 1990, Antosca spoke with Braga’s mother to advise her that “they" would be staying on an island in Florida, that there would be plenty of activity to keep her son busy and that he (Antosca) would “keep a close watch" over her son.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
The interpretation of an insurance contract is a matter of law for the court. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). As a preliminary matter, I must determine whether Massachusetts or Florida law applies to this matter. The insurance policy at issue does not specify which state’s law should apply to the issues involved; the defendant maintains that Florida law controls; plaintiff argues that Massachusetts law controls. The choice of law rules in Massachusetts apply the law of the state with the “most significant relationship” with the suit. Sargent v. Tenaska, Inc., 914 F.Supp. 722, 726 (D.Mass. 1996). Among the factors to be considered are the place of contracting; the place of negotiation of the contract and the place of performance; the location of the subject matter of the contract and the domicile, residence, nationality, place of incorporation and place of business of the parties. See Bushkin Associates, Inc. v. Raytheon, Co., 393 Mass. 622, 632 (1985). In particular, the court should consider the needs of the interstate system, the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in determining the particular issues, the protection of justified expectations, the basic policies underlying a particular field of law and certainty, predictability and uniformity of result. Id.
Nearly all these factors militate in favor of the application of Florida law. The contract in question was formed in Florida when Antosca contacted a Florida insurance agent regarding a home owner’s policy. The policy was issued by INA’s Tampa, Florida office. The policy insured a Florida dwelling and contained Florida mandatory endorsements. The accident underlying the plaintiffs claim for coverage occurred in Florida. The defendant’s Tampa, Florida claim office investigated the claim and ultimately denied the request for coverage. The only contact with Massachusetts in this entire matter is that the residence of the injured party and of the plaintiff is in Massachusetts and the underlying lawsuit against the plaintiff that gave rise to a judgment against the defendant was filed in Massachusetts.[4] Certainly, Florida interests in regulating insurance and insurance contracts weigh heavily in favor of the application of Florida law. The desire for certainty, predictability and uniformity of result also argues in favor of the application of Florida law. See also Searles v. Standard Accident Ins. Co., 316 Mass. 606 (1994); Lee v. New York Life Ins. Co., 310 Mass. 370 (1941).[5] A large number of homeowners *646 from different states reside for part of the year in Florida. Requiring the homeowners’ policies issued on these Florida residences to look to the law of the state of the injured party or of the homeowner for interpretation of the policies would lead to great uncertainty in the application of insurance law in Florida.
There is no Massachusetts case law interpreting the definition of “insured” in the phrase here at issue while there are Florida cases interpreting the instant phrase. The dearth of Massachusetts case law is most likely due to the fact that the phrase to be defined is one used in Florida, but not in Massachusetts, home insurance policies. In any event, based upon the above analysis, I conclude that Florida law applies in this case.
Under Florida law, a resident is one who lives in a place with no present intent of moving from there. General Guaranty Insurance Company v. Broxsie, 239 So.2d 595, 597 (Fla.App. 1970). Braga clearly was not a person who lived at Antosca’s home with no present intent of moving from there. Indeed, Antosca had never met Braga before 1990 and the record is devoid of any facts indicating that they had any relationship other than the relationship involved in building the house. Further, the plaintiff went to the named insured’s property only as a pleasant respite from the harsh New England winter. He went to work and intended to stay at most ten or twelve weeks. He did not register to vote, obtain a Florida’s driver’s license, or change his mailing address. Nor did he bring any belongings with him other than his clothes. The reasonable inference from these facts is that once the home was built, Braga would never return to it. It certainly cannot be said that he had no present intention of not removing therefrom. On the contrary, all evidence indicates that he had no intention of remaining there.
The definition of a “resident of the named insured’s household” under a homeowner’s policy containing the same policy language as is at issue here was considered in Becklin v. Travelers Indemnity Company, 263 So.2d 629 (Fla. 1972). The Court concluded that the elements for proving residency under this phrase are “. . . (1) close ties of kinship; (2) a fixed dwelling unit; and (3) enjoyment of each of [sic] part of the living facilities.” Id. at 630. The Court further stated ”... The resident is more than a mere visitor or transient, but lives at a place with additional attachments of such significance as to render that person a more or less consistent part of the community.” Id., quoting General Guaranty Insurance Company v. Broxsie, 239 So.2d 595 (Fla.App. 1970). Utilizing the Becklin analysis, it is apparent that the plaintiff was not a resident of Antosca’s household. He was not a kin of Antosca. It is not clear exactly what the Florida Court meant by the second element of “a fixed dwelling unit.” If fixed dwelling unit means the people permanently residing at the unit, those would presumably be the Antosca family. Braga was not part of that unit. As far as enjoyment of each part of the living facilities, Braga was on the premises to work, not to enjoy the living facilities. He admitted that he could not remain if he did not work. Further, Braga was permitted to sleep only in one corner of the first floor.
The Becklin Court also required that a resident must be one who lives at a place with attachments of such significance as to render him a more or less consistent part of the community. Braga was no part of the Upper Captiva Island communfly. He was staying on the premises much as any migrant laborer stays on-site while his services are utilized. Accordingly, under the considerations Florida courts have established for determining if one is a resident of the insured’s household, Braga does not qualify as such.
If for any reason Braga should be deemed a resident of the named insured’s household, since he was under 21, he must be in the care of an insured to meet the definition of a named insured. Plaintiff was not in the care of any named insured at the time of the accident. Plaintiff was an emancipated adult who had graduated from high school and had been earning a living since graduation. Although Antosca did have some control of Braga’s activities and told Braga’s mother that he (Antosca) would look after Braga, this did not place Braga in Antosca’s “care.” Antosca did not support Braga or provide any other benefit to him. Antosca “employed" Braga as a temporary, part-time laborer.
Finally, if this Court were to adopt plaintiffs argument, the logical result would be that it would be impossible for insurers to calculate the risk in issuing a homeowner’s policy. Insurers would have no way of determining how many residents might stay at the insured premises for a month or two. Such a result is not desirable as a matter of public policy.
ORDER
For all the above reasons, the defendant’s motion for summary judgment is ALLOWED. The plaintiffs cross-motion for summary judgment is DENIED.
A judgment shall enter declaring that Insurance Company of North America is not obligated to pay the judgment that has been recovered against plaintiff Christopher Braga in Plymouth Superior Court, Civil Action No. 93-0177B.

It is not clear from the summary judgment record who supplied the sleeping bag.

 He received about the same amount of spending money in 1990.

 Braga worked about the same number of hours in 1990.

 The insureds are also residents of Massachusetts but the insureds are peripheral to this case.

 Both these cases were decided before Massachusetts changed its choice of law principles but both hold that the law of the state where the policy issued should control.